## Kassab v. Medical Service Association of Pennsylvania, Inc.

*Francis A. Ferrara*, for plaintiffs.

*Butler, Beatty, Greer & Johnson*, and *Hull, Leiby & Metzger*, for defendant:

CATANIA, J., April 18, 1966.—This is a suit in equity brought by plaintiff, Joseph Kassab, against defendant,

Medical Service Association of Pennsylvania, Inc. Preliminary objections were filed by defendant to plaintiffs' amended complaint. We entered an order sustaining the preliminary objections and dismissing the complaint, and an appeal has been taken from our order, necessitating the writing of this opinion.

Plaintiff, Joseph Kassab, is a physician licensed by the Commonwealth of Pennsylvania, and is engaged in the practice of medicine in the City of Chester. At one time, he was a participating doctor in the Blue Shield Plan, but has since resigned as such. At various times during the year 1962, he performed medical services for certain Blue Shield subscribers. At the time of the performance of these services, he obtained from these subscribers alleged assignments directing Blue Shield to pay him the amounts which otherwise would have been payable to them in connection with the services rendered under their Blue Shield subscription agreements. Blue Shield refused to honor these assignments and made payment directly to the subscribers. The preliminary objections filed are for a demurrer, a request for more specific pleading and a motion to strike the amended complaint.

The first count of the amended complaint alleges that certain Blue Shield subscribers for whom plaintiff, Joseph Kassab, performed services have notified Blue Shield to deliver to him the Blue Shield checks, payable to their order, and that certain Blue Shield subscribers assigned to him their right to receive payment from Blue Shield with respect to such services.

These assignments are specifically prohibited by Article III, Section 1 of the Blue Shield Subscription Agreement, which reads as follows:

"1. Any rights of a subscriber to receive services or payments hereunder are personal to the subscriber and may not be assigned".

We feel that this provision of the Blue Shield Sub-

scription Agreement against the assignment of any right to payment which becomes due to the subscriber under such agreement is not only valid, but essential to the continued success of the Blue Shield Plan. Accordingly, the assignments relied upon by plaintiff, Joseph Kassab, are completely invalid and plaintiff, Joseph Kassab, who is a non-participating doctor, has no right to enforce payment of Blue Shield fees directly to himself for medical services performed for Blue Shield subscribers.

In the second count of the amended complaint, plaintiffs seek to compel Blue Shield to register plaintiff, Joseph Kassab, as one of its participating doctors, even though he admittedly refused to assume the obligation to provide services for low income Blue Shield subscribers without charging more than the Blue Shield fee.

Section 8(a) of The Nonprofit Medical, Osteopathic and Dental Service Corporation Act of June 27, 1939, P. L. 1125, as amended, 15 PS §2851-1508(a) (the Blue Shield Regulatory Act), provides as follows concerning the rights of doctors to become participating doctors with Blue Shield:

"8. Rights of doctors of medicine, doctors of osteopathy, doctors of dental surgery, etc.

"(a) Every doctor of medicine, doctor of osteopathy or doctor of dental surgery practicing within the area covered by any nonprofit medical, osteopathic and dental service corporation, shall have the right, on complying with such regulations as the corporation may make with the approval of the Department of Health, to register with such corporation for general or special medical, osteopathic or dental services, as the case may be, within that area, but the corporation may, with the approval of the Department of Health, refuse to place the name of any doctor of medicine, doctor of osteopathy or doctor of dental surgery on its register. Any nonprofit medical, osteopathic or dental service cor-

poration may, with the approval of the Department of Health, remove from its register the name of any doctor of medicine, doctor of osteopathy or doctor of dental surgery after due notice and hearing for cause satisfactory to the corporation".

Section 9(1) and 9(2)(d) of the act contain the following provisions concerning the services to be provided to Blue Shield subscribers: 15 PS §2851-1509:

"9. Determination of income status; rights of persons of low income.

"(1) The nonprofit medical, osteopathic and dental service corporation shall from time to time, by action of its members, fix the requisites for persons of low income eligible for the benefits of and under this act, such requisites to afford due consideration to the marital status and to the number of dependents of the persons involved and such requisites to be consistent with the declaration of necessity contained in section two of this act. Any requisites thus fixed shall be subject to the approval of the Insurance Commissioner of the Commonwealth of Pennsylvania. . . .

"(2) (d) Every person of low income and every person of over-income, residing in the area served by a nonprofit medical, osteopathic and dental service corporation, shall be entitled, upon complying with regulations adopted by that corporation and the payment of such initiation and other fees as authorized by the Insurance Department, to the services of any doctor of medicine, doctor of osteopathy or doctor of dental surgery registered with the corporation under such terms and conditions as are customary in medical, osteopathic or dental services in the community, but only within the limits of services for which such doctors of medicine, doctors of osteopathy or doctors of dental surgery are registered: . . . Provided further, however, that persons of over-income shall be liable to doctors of medicine, doctors of osteopathy or doctors of dental

surgery registered with the corporation rendering services to such persons of over-income, for the full amount of the usual fees and charges for such services made by such doctors of medicine, doctors of osteopathy or doctors of dental surgery, and any payment made by the corporation to doctors of medicine, doctors of osteopathy or doctors of dental surgery for services rendered to subscribers of over-income shall be a payment to the extent agreed upon between the corporation and the doctors of medicine, doctors of osteopathy or doctors of dental surgery on account of the full sum due the doctors of medicine, doctors of osteopathy or doctors of dental surgery for rendering such services".

These statutory provisions outline the essential and basic features of the Blue Shield Plan for prepaid medical service which, as has already been pointed out, are that medical services will be provided to low income subscribers by participating doctors who have obligated themselves to accept the Blue Shield fee as their sole remuneration. Furthermore, the legislature clearly intended that the Blue Shield Regulatory Act should be liberally construed in order to further the Blue Shield Plan. Section 19 of that act, 15 PS §2851-1519, provides, in part, as follows:

"19. Constitutional construction and severability:

"It is hereby declared to be the purpose and intent of this act and the policy of the Legislature to authorize qualified persons to provide adequate medical, osteopathic or dental services for residents of this State who are unable to provide such services for themselves or their dependents at their own cost without depriving themselves or their dependents of such necessaries of life as food, clothing and shelter, and provide persons of over-income with the limited medical, osteopathic or dental service benefits hereinbefore set forth. The courts of this State are hereby directed to construe this act liberally in order to accomplish those ends".

Plaintiff's, Joseph Kassab's, efforts to force Blue Shield to register and treat him as a Blue Shield participating doctor, even though he refuses to assume the obligation assumed by all other participating doctors to furnish service benefits to low income Blue Shield subscribers and to accept the Blue Shield fee as his sole remuneration in such cases, is contrary to the basic intent of the legislature, as evidenced in the Blue Shield Regulatory Act, and must be refused.

Blue Shield's demurrer to both the first count and the second count to plaintiffs' amended complaint should be sustained, and judgment should be entered for defendant.

Since we have sustained defendant's demurrer and dismissed the amended complaint, it is not necessary that we pass on defendant's motion for more specific pleading and motion to strike the amended complaint.