No. 53,012

AUGUSTA MEDICAL COMPLEX, INC., *et al., Appellees,* v. BLUE CROSS
OF KANSAS, INC., *Appellant.*

(634 P.2d 1123)

Opinion filed October 23, 1981.

*Gerald L. Goodell,* of Goodell, Stratton, Edmonds, Palmer & Wright, of
Topeka, argued the cause, and *Charles R. Hay,* of the same firm, and *O. J. Connell,*
of Connell & Connell, of El Dorado, were with him on the brief for the appellant.

*Robert J. Roth* and *J. Michael Kennalley,* of Hershberger, Patterson, Jones &
Roth, of Wichita, argued the cause, and *David C. All,* of Gaines & All, of Augusta,
*Stephen M. Blaes,* of Blaes & Heath, of Wichita, and *J. Francis Hesse,* of Jochems,
Sargent & Blaes, of Wichita, were with them on the brief for the appellees.

*Derek J. Shafer,* special assistant attorney general, was on the brief for *amicus
curiae* Fletcher Bell, Commissioner of Insurance of the State of Kansas.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal by Blue Cross of Kansas, Inc.,
from a district court determination that assignments from Blue
Cross subscribers are enforceable against Blue Cross, notwith-
standing nonassignability provisions in all subscribers' contracts.
The plaintiffs consist of 15 Kansas hospitals which have no
contracts with Blue Cross and two individual subscribers of Blue
Cross.

This is the fourth time in less than two years that Blue Cross
has been before this court in litigation arising from conflicting
ideas of how best to contain spiraling hospital service costs in
Kansas. *Blue Cross & Blue Shield v. Bell,* 227 Kan. 426, 607 P.2d
498 (1980); *Augusta Medical Complex, Inc. v. Blue Cross,* 227
Kan. 469, 608 P.2d 890 (1980); and *Comanche County Hospital v.
Blue Cross of Kansas, Inc.,* 228 Kan. 364, 613 P.2d 950 (1980).

Most of the events leading up to this action are chronicled in
the earlier *Augusta Medical Complex* case and need not be
repeated in detail. It is sufficient to say that for many years Blue

Cross and all Kansas hospitals had retrospective reimbursement contracts. The hospitals were reimbursed directly by Blue Cross on the basis of 104% of allowable costs. If subscribers incurred services at a nonmember hospital the subscriber would be paid directly 80% of the allowable cost and assignments were not prohibited. Inasmuch as all Kansas hospitals were members of Blue Cross, presumably this payment feature provided at least some incentive to participate as a member.

In the mid-1970's, under pressure from the insurance commissioner, Blue Cross announced it was shifting from hospital contracts based on *retrospective reimbursement* to contracts based on *prospective reimbursement.* Efforts at securing the voluntary cooperation of the hospitals failed and a mandatory shift was initiated. The move was viewed by Blue Cross as an integral part of a statutorily mandated program of health care cost containment. Several hospitals viewed the change as an intolerable and unwarranted intrusion into the hospitals' internal affairs. The battle lines were drawn. Blue Cross gave the hospitals a choice—agree or be terminated. These hospitals rebelled and sought, in the first *Augusta Medical Complex* case, to prevent their termination. The hospitals lost and were terminated.

Along with this shift came another change. Blue Cross concluded that paying only 80% of subscribers' costs incurred at nonmember hospitals unfairly penalized their subscribers, who often had little or no choice as to which hospitals to enter. Accordingly, as of July 1, 1980, a rider was added to all subscribers' contracts which, in essence, stated that henceforth subscribers would be reimbursed 100% of allowable costs. This increase in payment also eliminated a significant incentive for hospital participation in Blue Cross; therefore, another provision of the rider stated the benefits were personal and could not be assigned.

The plaintiff hospitals, now nonmembers of Blue Cross, requested and received assignments from their patients who were Blue Cross subscribers. Blue Cross refused to honor these assignments and continued to pay the subscribers directly. This state of affairs was financially painful to the affected hospitals for, at the very least, payments to them were delayed and, at most, never received. This declaratory action was commenced to determine whether or not the nonassignability provision was enforce-

able. The trial court held that the subscriber's right to benefits was a chose in action and, as such, assignable as a matter of law. Blue Cross appeals therefrom.

Before we can consider the case on its merits we must dispose of a jurisdictional issue. Blue Cross contends that the twin doctrines of exhaustion of administrative remedies and of primary jurisdiction bar this action. Blue Cross notes that K.S.A. 1980 Supp. 40-1806 required it to first submit the rider in controversy to the insurance commissioner, who has certain statutory duties in connection therewith. This was done. The statute further provides any person adversely affected by the commissioner's order or action may commence an action against the commissioner of insurance.

The plaintiff hospitals requested an opinion from the attorney general on the validity of the nonassignability rider, with said request being referred to the commissioner of insurance. This request was withdrawn prior to any formal action by the commissioner. Without burdening this opinion with a lengthy discussion of these two important doctrines, it is sufficient to say that the controversy involved in this declaratory judgment is a question of law and is not of a nature that either the statutes or case law of Kansas require its submission to the commissioner of insurance as a prerequisite to determination by the court system, or that the commissioner is required to be named a defendant herein.

On the merits, a single narrow issue is raised. Is the provision in the July 1, 1980, Blue Cross rider, stating the contract benefits are personal and nonassignable, valid and enforceable? The rider provides in relevant part:

"2. Notwithstanding any other provision of the Contract or Certificate, payment of benefits will be made to the Subscriber for services of a Non-Member Hospital in the Kansas Plan Area. The benefits of the Contract or Certificate are personal to the Subscriber and are not assignable by the Subscriber in whole or in part to a Non-Member Hospital in the Kansas Plan Area or to any other person or entity."

The plaintiffs contend Blue Cross subscribers have a right to assign as a matter of law since their right to payment is a chose in action. This is the ground upon which the district court based its decision.

Blue Cross agrees that the general rule holds choses in action are freely assignable. It argues instead that the rule is not absolute

and that the trial court erred in not going beyond this general rule and considering other applicable rules and exceptions.

The term "chose in action" refers to a right to be paid (*O'Grady v. Potts,* 193 Kan. 644, 648, 396 P.2d 285 [1964]) and, generally speaking, assignments thereof are valid and enforceable. *Commodore v. Armour & Co.,* 201 Kan. 412, 418, 441 P.2d 815 (1968). As a general rule, a contract is not assignable where the nature or terms of the contract make it nonassignable. 6A C.J.S., Assignments § 30, p. 630. But, logically, if the parties are to be held to have agreed to make the contract or particular rights thereunder nonassignable, then it should have been a negotiated contract. This distinction is perhaps one of the major reasons that assignments of insurance benefits after loss are generally enforced despite contractual provisions precluding assignment. See 43 Am. Jur. 2d, Insurance §§ 689-690, pp. 686-688; 46 C.J.S., Insurance § 1152, p. 35, § 1190, p. 106; Annot., 122 A.L.R. 144 (1939).

Free assignment of choses in action is considered to be a matter of public policy. However, other considerations of public policy may in particular instances compete with and override the desirability of free alienation of choses in action. By illustration, the potential for hardship to the working person and his or her dependents has given rise to K.S.A. 16a-3-305, which generally renders assignments of wages unenforceable. See also K.S.A. 44-514, which precludes assignment of workmen's compensation claims or awards.

Blue Cross contends that an urgent and overriding public interest compels the enforcement of the nonassignment provision herein. We agree.

Blue Cross and Blue Shield occupy unique niches in Kansas law. Blue Cross is a mutual nonprofit hospital service corporation. Blue Shield is a nonprofit medical service corporation. Each is wholly a creature of statute—K.S.A. 40-1801 *et seq.,* and K.S.A. 40-1901 *et seq.,* respectively. They were created to provide health insurance to Kansans at the lowest financially sound rates. Over the years the emphasis on economy of operation has broadened from just internal efficiency to assisting in and encouraging efficiency in the operation of the hospitals themselves.

The concern over skyrocketing health care costs is real and nationwide. We need not spend time in this opinion stating the magnitude of the problem or its great potentiality for harm.

Health care cost containment is a matter of vital public interest and policy. The Kansas legislature has placed the burden of hospital care cost containment upon Blue Cross. K.S.A. 1980 Supp. 40-1803(8) provides:

"(8) experimental and demonstration projects may be undertaken to determine the relative advantages and disadvantages of various alternative methods of providing service or indemnity benefits for hospital care or other health services. Such projects may include payment systems to providers designed to encourage providers to use their facilities and personnel more efficiently and thereby to reduce the total costs of hospital care and other health services involved without adversely affecting the quality of such services."

K.S.A. 1980 Supp. 40-1811(c) provides:

"(c) Each such corporation shall devote a reasonable effort to control costs, including both its administrative costs and costs charged to it by participating hospitals. *Such effort shall include, but not be limited to, a continuing attempt by such a corporation through a combination of education, persuasion and financial incentives and disincentives to control costs and to encourage participating hospitals to control costs* by: (1) Elimination of duplicative or unnecessary services, facilities and equipment; (2) nonprovider participation in the affairs of the corporation; (3) subscriber support of cost containment activities; (4) promotion of sound management practices in participating hospitals; (5) implementation of sound management practices within the nonprofit hospital service corporation; (6) promotion of alternative forms of health care; and (7) engagement in, and evaluation of, cost control experiments, including incentive reimbursement and utilization and peer review programs." (Emphasis supplied.)

It should be borne in mind that contracts between hospitals and Blue Cross contain the provision that the hospital will accept the Blue Cross reimbursement as payment in full on covered services. For illustration, if a member hospital bills $500.00 for use of the operating room and Blue Cross allows $400.00, the member hospital cannot extract the difference from the subscriber. This is a protection to the subscriber not existing in services performed by nonmember hospitals. It is undeniable that there is at least some degree of cost control in member hospitals, as far as the subscriber is concerned, that does not exist in nonmember hospitals.

Blue Cross has a clear legislative mandate to control costs in member hospitals. Inherent in that dictate is a directive to encourage hospitals to become members.

If Blue Cross is compelled to honor the assignments to nonmember hospitals, then what possible incentive exists for a hospital to become a participating member? Members and non-

members will each receive essentially 100% payments directly from Blue Cross. The nonmember hospitals would receive the benefits of membership without being subjected to the restrictions and controls indigenous to membership.

The plaintiffs argue that there is no evidence that the cost control methods of Blue Cross will in fact accomplish their intended purpose. In support thereof, plaintiffs aver that the plaintiff hospitals generally have lower rates than do member hospitals. This really has no bearing on the question before us. The legislature has seen fit to meet the statewide problem of hospital care cost control by granting broad powers to Blue Cross, an action reasonably calculated to accomplish the desired goal. We need not discuss this contention further.

A review of other jurisdictions reveals no appellate court opinion in precise point. There are a few trial court decisions with similar issues, although of necessity arising from a different statutory framework.

*Kassab v. Med. Service Assn. of Pa.,* 39 Pa. D. & C. 2d 723 (1966), *aff'd per curiam,* 425 Pa. 630, 230 A.2d 205 (1967), involved assignments to a nonparticipating physician in a Blue Shield Plan. The plan had a nonassignability clause. The clause was upheld on the basis the provision was "not only valid, but essential to the continued success of the Blue Shield Plan." (p. 725.)

*Riddle Memorial Hospital et al. v. Blue Cross of Greater Philadelphia,* 63 Del. Co. 361 (Pa. 1976), involves a strikingly similar factual situation to the case before us. In enforcing the nonassignability provision the trial court reasoned at 370:

"Public Policy in this Commonwealth favors the use of Blue Cross as a financing agent for needed hospital care for the greater number. It is essential to that overriding concern that Blue Cross retain the unfettered ability to negotiate with hospitals and enter into Provider Contracts. Otherwise each hospital would receive its payments directly from Blue Cross through the use of assignments and the pressure to enter into a contract and become member hospitals would be greatly diminished if not destroyed. (Citations omitted.)

"Blue Cross would cease to exist, and the whole laudatory concept of the non-profit hospital care insurance program frustrated, if not reduced to naught. Part of the concept is the setting of hospital rates through Provider Agreements for subscriber benefits. This will end if Plaintiffs' position prevailed.

. . . . .

"It is for the Plaintiffs to decide if they desire to be a part of the plan, they must become members; there is no way whereby they may enjoy the best of both worlds

at the same time. Without Provider Agreements, Plaintiffs are outside the pale of Blue Cross coverage and procedures; they are under method two, as *Non-Members."*

We therefore conclude that the provision in the subscribers' contracts rendering benefits personal and nonassignable is vital to the functioning of defendant Blue Cross as a mutual nonprofit hospital service corporation in carrying out its statutory duties and obligations and, accordingly, public policy requires that the same be upheld as valid and enforceable.

The judgment is reversed and the case is remanded to the district court with directions to enter judgment in favor of the defendant consistent with this opinion.