**KENT GENERAL HOSPITAL, INC., Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF DELAWARE, INCORPORATED, Appellee.**

Supreme Court of Delaware.

Submitted Feb. 16, 1982.

Decided March 10, 1982.

Randy J. Holland (argued) and William H. Sudell, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

Max S. Bell, Jr. (argued) and William J. Wade of Richards, Layton & Finger, Wilmington, for appellee.

Before DUFFY and QUILLEN, JJ., and BALICK, Judge.

QUILLEN, Justice:

This is an appeal from a final order of the Court of Chancery denying the petition of Kent General Hospital ("Kent General") for declaratory relief and a permanent injunction and granting the cross-petition of Blue Cross and Blue Shield of Delaware, Inc. ("Blue Cross") for declaratory relief. We rely heavily on Kent General's opening brief for our statement of the nature of proceedings and facts. The lawsuit concerns a clause in Blue Cross subscriber agreements, the agreements that establish the scope of coverage guaranteed a subscriber in return for premiums paid to Blue Cross.

In particular, this appeal is from the conclusion of the Court of Chancery that the provision in the Blue Cross subscriber contracts which forbids the assignment of benefit payments is valid and enforceable.

Kent General sought a declaratory judgment, preliminary injunction, and a permanent injunction that, beginning on July 1, 1981, would have required Blue Cross to pay Kent General directly for services rendered to patients having Blue Cross coverage. The direct payment to the hospitals would have been made by Blue Cross pursuant to an assignment executed by the patients to Kent General.

Discovery was conducted, briefs and affidavits submitted, and oral argument heard on petitioner's motion for preliminary injunctive relief. By its Letter Opinion of June 26, 1981, the Court denied the motion for preliminary relief, having determined that "the condition ... which forbids the assignment of benefits provided for in the subscriber contracts appears to be valid and enforceable".

Thereafter, Kent General and Blue Cross agreed that the record before the Court for purposes of the motion for a preliminary injunction would be the record to be considered by the Court of Chancery for the purpose of ruling on the request for a permanent injunction and the reciprocal request for a declaratory judgment. After reviewing that record, the Court of Chancery entered its final order on July 20, 1981. The Court stated that, for the reasons set forth in its Letter Opinion of June 26, 1981, the request by Kent General for a permanent injunction and declaratory judgment was denied and the application by Blue Cross for a declaratory judgment was granted.

The factual framework of this appeal is the contractual arrangements which Blue Cross has traditionally entered into (1) with area hospitals and (2) with its subscribers. For a number of years, Kent General has contracted with Blue Cross to provide hospital services to Blue Cross patient-subscribers as a "Plan" hospital. A Plan hospital is one which has executed an agreement, called a "Provider Agreement" with Blue Cross.

Plan hospitals routinely submit a subscriber-patient's bill directly to Blue Cross and Blue Cross makes reimbursement directly to the hospital in accordance with the terms of the Provider Agreement. As there is no such contractual arrangement

between a Non-Plan hospital and Blue Cross, absent an assignment mechanism of the sort sought by Kent General herein, a Non-Plan hospital would typically send a bill to the subscriber-patient who is responsible for paying that bill. The subscriber would seek reimbursement from Blue Cross in accordance with the Non-Plan benefit provisions of his subscriber agreement. Blue Cross would remit the payment to the subscriber and the hospital would have to look to the subscriber for payment. Obviously, prompt direct payment by Blue Cross to a hospital can have an effect on the hospital's cash flow and its success at debt collection.

The non-assignment clause in the subscriber contracts generally reads as follows:

Subject to the reductions in the amount of coverage set forth elsewhere in this Contract, [Blue Cross] shall have full and exclusive discretion in determining who shall receive payment in the event services are received from a provider of service not participating in a plan of [Blue Cross]. Such payment shall not be assignable without the written approval of [Blue Cross].

Provider Agreements generally run for an indefinite term and are periodically renegotiated. Negotiations between Kent General and Blue Cross for a new contract broke down in early May, 1981. Effective June 30, 1981, the then-existing Provider Agreement between Kent General and Blue Cross expired and Kent General became a Non-Plan hospital. A Non-Plan hospital has no contractual arrangement with Blue Cross.

The issue on appeal is whether Blue Cross, in accordance with its contracts with its subscribers, may refuse to honor assignments by its subscribers to Kent General. For present purposes, we assume Kent General has sufficient standing to litigate the issue without any subscriber being a party. We also assume that at the time of the assignment the services have been rendered by Kent General and that payment in some amount is owed by Blue Cross to the subscriber. There does seem to be a dispute between the parties as to when Blue Cross is finally obligated to pay its subscribers, with Blue Cross contending its payments to subscribers are customarily "interim" payments because they are subject to review. This factual contention could be significant but, under our view of the case, we do not reach it.

The case seems to turn on public policy with regard to the non-assignment clause in the subscriber contract. To support validity, Blue Cross cites the freedom of contract [14 *Williston on Contracts* § 1630 at 11 (3d Ed. 1972); *State v. Tabasso Homes*, Del. Gen.Sess., 28 A.2d 248, 252 (1942); *Kelly v. Bell*, Del.Ch., 254 A.2d 62, 70 (1969), aff'd Del.Supr., 266 A.2d 878 (1970)] and the specific upholding of non-assignment clauses in contract cases generally [37 A.L.R.2d 1251 (1954); *Paul v. Chromalytics Corp.*, Del.Super., 343 A.2d 622 (1975)]. Kent General, on the other hand, argues that there is a public policy which generally supports the free assignment of the right to receive money and in insurance law particularly there is a policy which invalidates a non-assignment clause in a contract after loss has been incurred. *International Rediscount Corporation v. Hartford Accident and Indemnity*, D.Del., 425 F.Supp. 669 (1977). Courts distinguish between assignment of a policy by an insured, which might change the risk, and assignment of the mere right to receive payment, which is a fixed obligation of the insurer, enforcing contract provisions barring the former, but not those barring the latter. Cf. 18 *Del.C.* §§ 2720, 3504.

We look first at some reasons commonly given for the policy in insurance cases prohibiting non-assignment after the loss is ascertained. The reasons are variously stated but the concepts are related. It is said that failure to honor the assignment "would be a mere act of caprice or bad faith." *International Rediscount*, 425 F.Supp. at 672 quoting *Georgia Co-Operative Fire Association v. Borchardt & Company*, Ga.Supr., 123 Ga. 181, 51 S.E. 429, 430 (1905). It is said the prohibition on assignment is "inconsistent with the obliga-

tion of the insurer to provide the indemnity called for by the terms of its contract and ... contrary to public policy." 16 *Couch on Insurance* 2d § 63.41 (1966). It is said "total avoidance of the policy as a consequence of assignment after loss would be highly penal." 3 *Williston on Contracts* § 422 at 135 (1960).

These statements are simply inapplicable to the present situation. Blue Cross is not trying to avoid payment. It simply wants to retain the right to pay its subscriber directly when it does not have a contract with the provider. Its view is that it can monitor price through provider contracts and thus perform a cost containment function on behalf of its subscribers. Regardless of the success of Blue Cross in that endeavor, there is no basis to conclude Blue Cross is operating out of bad faith or with caprice. Thus we can discard the more venal of the public policy arguments.

As we see it, the basic policy on which Kent General rests its position is the policy favoring the free alienability of property. But, we must determine whether the policy in support of free alienability of choses in action is such an absolute one that it must override a contract provision prohibiting assignment in a specific context. Originally choses in action were not assignable at all but the right to assign a contract right was later generally recognized, first in equity and then at law. 4 *Corbin on Contracts* § 856 (1951); 10 *Del.C.* § 3902; Court of Chancery Rule 17; Superior Court Civil Rule 17; *Garford Motor Truck Co. v. Buckson*, Del.Super., 143 A. 410 (1927); *Industrial Trust Co. v. Stidham*, Del.Supr., 33 A.2d 159, 160–61 (1942). But that general policy reversal does not end our specific inquiry. As Corbin says:

> There is no sufficient analogy between chattels and "choses in action" on which to rest the conclusion that contract rights, once inalienable at common law, must now of necessity be alienable even though the contract by which they are created says that they are not. In all cases, assignees are held to take the assigned right with all its native weakness-

es and subject to many defenses. Alienability is desirable, and it has been accomplished; but care has been taken to protect the obligor, in ways that are not applicable in the law of chattels. The sale of a chattel habitually involves only two specific persons; the assignment of a right always involves three.

4 *Corbin on Contracts* § 873, p. 488–89. We conclude therefore that the public policy arguments must be analyzed in this particular context. We look first to the expression by the General Assembly.

Kent General notes that our statute does not contain a provision specifically authorizing a non-assignment clause in subscriber agreements. Compare 40 *Pa.C.S.A.* § 6326(5). But the absence of such statutory enabling provision in isolation does not mean that the non-assignment contract clause here is void as against public policy. To the contrary, we think any policy to be gleaned from our Delaware statute supports Blue Cross in the instant case. There is a separate chapter of our law, 18 *Del.C.* Ch. 63, which governs health service corporations. The uniqueness of health service corporations is recognized by exempting them from all other provisions of the insurance law unless a provision is specifically made applicable. 18 *Del.C.* § 6301. The public interest involved in health service corporations is recognized by a requirement that they be non-profit. 18 *Del.C.* § 6302. The application for a certificate of authority specifically contemplates "contracts between the applicant and participating hospitals, physicians and other providers of health services showing the terms under which services are to be furnished to subscribers or members". 18 *Del.C.* § 6304(b). It is also our understanding that Blue Cross is the only health service corporation operating under the Delaware Health Service Corporations Statute.

We think it is clear that our General Assembly contemplated that the health service corporation would be a special public interest organization distinct from insurance companies. In performing its public interest function, the General Assembly has

**1372**

specifically recognized that Blue Cross would exercise some leverage as to price by its right to contract with medical service providers. In short, to the limited extent that our statute speaks, we think it favors the position of Blue Cross, and not that of Kent General.

Moreover, to the extent that policy judgments on this issue have been made by courts, the position of Blue Cross is also favored. There is an excellent and recent trial court opinion in our neighboring state of Pennsylvania, *Riddle Memorial Hospital v. Blue Cross of Greater Philadelphia*, Pa. Common Pleas, 63 Pa.Del.Cty. 361 (1976). It held "that the prohibition against assignment clause is valid and enforceable against any and all assignments by the subscribers of Blue Cross." The opinion was not particularly keyed to the concededly more precise Pennsylvania statute noted above. Rather, the Court took a broad policy view by: recognizing the interrelationship between subscriber and provider contracts, the singular uniqueness of the Blue Cross system, the non-assignability clause as the keystone in the system, the right of Blue Cross to deal with the subscriber with whom it contracted and the policy favoring general medical care at reasonable cost. See also *Kassab v. Med. Service Ass'n. of Pennsylvania, Inc.*, 39 Pa.D.& C.2d 723 (1966), aff'd Pa.Supr., 425 Pa. 630, 230 A.2d 205 (1967).

Similarly the Kansas Supreme Court in the recent case of *Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc.*, Kan.Supr., 230 Kan. 361, 634 P.2d 1123 (1981) concluded:

... that the provision in the subscribers' contracts rendering benefits personal and nonassignable is vital to the functioning of defendant Blue Cross as a mutual non-profit hospital service corporation in carrying out its statutory duties and obligations and, accordingly, public policy requires that the same be upheld as valid and enforceable.

While the Kansas statute examined was precise on the cost containment function of mutual non-profit hospital service corporations, the reasoning of the Court was also based on broad policy considerations. The Court recognized the general assignability of a chose in action and particularly recognized "that assignments of insurance benefits after loss are generally enforced despite contractual provisions precluding assignment." Then pointedly the Court said:

Free assignment of choses in action is considered to be a matter of public policy. However, other considerations of public policy may in particular instances compete with and override the desirability of free alienation of choses in action.

The Kansas Court then found the overriding policy on the issue before it to be the cost containment function of Blue Cross recognized in the Kansas statute. A Colorado trial court recently followed the *Augusta* case based on a clear provision in the Colorado statute. *Board of Trustees for Weld County General Hospital v. Rocky Mountain Hospital and Medical Service, D/B/A Blue Cross and Blue Shield of Colorado, Inc.*, Col.Dist.Ct., Weld County Civil Action No. 81–CV–385 (1981).

Thus, while we concede other statutes are more specific than ours with regard to a statutory mandate on cost containment, there is a broad recognition in the case law of the special role of health service corporations. Blue Cross is in fact operating in Delaware on a similar basis as it operates elsewhere. Our statute to some extent recognizes that special role. It would be odd to recognize that special role and then deny the health service corporation a contract tool generally recognized as vital to the role. Under these circumstances, we cannot conclude that Kent General has met its obligation to show that the contract non-assignment clause is void and unenforceable as a matter of public policy. To the contrary, we think the policy scales tip the other way. If we have misjudged, our error can be corrected by the General Assembly.

The judgment of the Court of Chancery is affirmed.