**Fred DAVIDOWITZ, et al., Plaintiffs,**

**v.**

**DELTA DENTAL PLAN OF CALIFORNIA, Defendant.**

**No. C–90–0883–FMS.**

United States District Court, N.D. California.

Dec. 3, 1990.

Arthur Fine, Douglas W. Bordewieck, Mitchell, Silberberg & Knupp, Los Angeles, Cal., Peter F. Sloss, San Francisco, Cal., for plaintiffs.

M. Laurence Popofsky, Robert A. Rosenfeld, Judith Z. Gold, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant.

### ORDER PARTIALLY GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

FERN M. SMITH, District Judge.

This case presents an issue of first impression under the Employee Retirement Income Security Act of 1974 (ERISA). The central question is whether an employee dental benefit plan provider may prevent beneficiaries from assigning their right to payment to dentists. Defendant insurer

provides dental benefit plans to thousands of California employees. Plaintiffs are dentists who are not affiliated with defendant. For the reasons set out below, the Court partially grants plaintiffs' motion for preliminary injunction.

In granting an interlocutory injunction the Court must set forth the findings of fact and conclusions of law which constitute the grounds of its action. Fed.R.Civ. Pro. 52(a). Findings of fact shall not be set aside unless clearly erroneous. *Id.*

## FINDINGS OF FACT

Defendant provides group dental benefit plans to California employees. The employees are beneficiaries of the plan contracts. Three parties enter into each plan contract: an employee, his or her employer, and defendant. The plan contracts explicitly state that defendant will not honor a beneficiary's assignment of the right to payment.

Some dentists receive coverage payments directly from defendant, while others must bill their patients for these amounts. "Participating" dentists contract with defendant to provide services for beneficiaries and are paid directly by defendant. Direct payment enables participating dentists to receive compensation for the covered portion of the services without billing their patients for this amount.

In consideration for the direct payment structure, participating dentists agree to contractually stated fees and certain quality control procedures. Participating dentists also agree to bill their patients for co-payments, which represent the portion of dental services not covered by defendant's insurance plans.

Plaintiffs are "non-participating" dentists. They do not contract with defendant to provide services to plan beneficiaries. Defendant's insurance plans do provide coverage for visits to these non-participating dentists; however, non-participating dentists are not subject to defendant's fee structure or quality control, nor do they receive direct payment when they provide services to plan beneficiaries.

Plaintiffs have attempted to circumvent defendant's policy against direct payment to non-participating dentists through two different methods. First, plaintiffs have asked their patients who are plan beneficiaries to assign their rights to payment. Defendant has refused to honor these assignments, in conformity with the contract provision which prohibits such assignments. Defendant has also ignored requests to mail covered payments directly to plaintiffs' offices, rather than to the beneficiaries' residences. Plaintiffs seek to enjoin defendant from refusing to honor the beneficiaries' assignments of their rights to payment, and from refusing to honor the requests to send payments directly to plaintiffs.[1]

Plaintiffs provide a unique service by agreeing to waive the co-payments which beneficiaries would otherwise be required to pay. Unlike participating dentists, plaintiffs are not bound by a requirement to bill beneficiaries for the co-payments. Dental treatment at plaintiffs' offices is thus generally "free" to beneficiaries, because plaintiffs only seek compensation for the covered portion of the services.

The Court finds that there is a significant possiblity that some beneficiaries are unable to obtain dental treatment from either participating or nonparticipating dentists. Though employed, these beneficiaries do not have enough disposable income to afford the standard co-payment. These beneficiaries are denied care from participating dentists, because participating dentists *must* bill them for the co-payment. Although the non-participating dentists are willing to waive the co-payment, they are not willing to provide services to a beneficiary without pre-payment of the covered

---

1. If the covered payment checks are mailed directly to plaintiffs, then beneficiaries can only endorse the checks by coming in person to plaintiffs' offices. Presumably beneficiaries would be asked to endorse the check to the order of the treating dentist.

Because this order enjoins defendant from refusing to honor beneficiaries' assignments of rights to payment, defendant's refusal to mail checks to plaintiffs is a moot issue.

portion of the services. This class of beneficiaries can only pre-pay by assigning their rights to payment of the covered portion of the services. Though theoretically covered by defendant's insurance, these beneficiaries may not be able to obtain dental treatment unless defendant is enjoined from refusing to honor assignments of rights to payment.

## CONCLUSIONS OF LAW

### I. Standards for preliminary injunctive relief.

The Ninth Circuit has proposed a "continuum" of tests for a preliminary injunction: "One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor ...

Recent cases have made it clear, however, that there are not really two entirely separate tests, but that they are merely extremes of a single continuum. [Citation] The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. [Citation] No chance of success at all, however, will not suffice. The irreducible minimum has been described by one court as a fair chance of success on the merits [Citation], while another has said the questions must be serious enough to require litigation. [Citation] The difference between the two formulations is insignificant. Therefore, we accept either as satisfactory."

*Benda v. Grand Lodge of Intern. Ass'n., Etc.,* 584 F.2d 308, 314–315 (9th Cir.1978).[2]

### II. The balance of harm tips toward plaintiffs, because an injunction will enable certain beneficiaries to receive previously unobtainable dental treatment, and will not require defendant to pay any more for covered services.

**A. Plaintiffs stand in the shoes of those beneficiaries who cannot currently obtain treatment.**

■ An ERISA plan beneficiary has standing to bring a civil action under ERISA. 29 U.S.C. § 1132(a). If a beneficiary assigns his right to payment to a health care provider, then that provider achieves the same standing that the beneficiary had to bring a claim under ERISA. *Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374, 1377–1378 (9th Cir.1986). Plaintiffs thus stand in the shoes of those beneficiaries who are currently unable to obtain dental treatment. A preliminary injunction is appropriate, because untreated dental problems raise a significant possibility of irreparable harm that may not be susceptible to mere monetary relief.

**B. This injunction will not lead to costly overutilization of dental services.**

■ Defendant claims that this injunction will lead to harmful overutilization of dental services, i.e., if plaintiffs are allowed to waive co-payments *and* defendant is required to honor the assignments, then beneficiaries will be able to obtain "free" treatment, which supposedly leads to unnecessary treatment. Overuse of the system, argues defendant, will result in higher insurance premiums for all beneficiaries.

The Court doubts that beneficiaries are likely to seek, for example, unnecessary root canals, even if they do not have to pay for them. The requested injunction, however, would not create a risk of overutiliza-

**2.** The several affidavits filed by plaintiffs and defendant in support of and in opposition to this motion for preliminary injunction are both customary and appropriate, and need not meet the standards of Fed.R.Civ.P. 56(e), or of the Federal Rules of Evidence. *Bracco v. Lackner,* 462 F.Supp. 436, 442 n. 3 (N.D.Cal.1978); *see also Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir.1984) (even inadmissible evidence may be given some weight to prevent irreparable harm before trial); *Orantes–Hernandez v. Smith,* 541 F.Supp. 351, 356 n. 4 (C.D.Cal.1982) (strict evidentiary rules governing a trial on the merits and a motion for summary judgment are not applicable to a motion for preliminary injunction).

tion even by the unique beneficiary who *likes* to visit his or her dentist, because defendant's system already prevents such overutilization. The plan contracts explicitly limit coverage to "necessary" treatment; therefore, defendant may validly refuse to pay for unnecessary services.

It is likely that an injunction would lead to full-utilization of defendant's insurance coverage. In other words, beneficiaries who cannot afford to pre-pay would be able to assign their right to payment to plaintiffs, and thereby receive necessary treatment. Although defendant may have assumed less than full-utilization in calculating its premium structure, it cannot assert that any resulting financial loss should be measured against the beneficiaries' current hardship. Beneficiaries may reasonably expect defendant to produce a premium structure based upon full-utilization, rather than under-utilization, even though this may lead to a future increase in premiums.

C. Defendant's concerns about "overstated" fees and the loss of its direct payment structure do not tip the balance of hardships in its favor.

Defendant also alleges that an injunction would result in "overstated" charges for services. For example, a plaintiff non-participating dentist and a participating dentist both list the fee charged for a tooth filling at $100. If the co-payment is 20% of the fee charged, the participating dentist will receive $80 in direct payment, and will bill the patient for $20. Under this injunction the plaintiff dentist will also receive $80 in direct payment by virtue of the beneficiary's assignment of her right to payment. Unlike the participating dentist, however, he only intends to receive $80, by virtue of his co-payment waiver. Defendant reasons that the $100 charge is thereby overstated. Apparently, defendant

would consider such a dentist entitled to only 80% of $80, or $64.[3]

Plaintiffs' response is that co-payment waivers do not produce any harm to defendant. In the above example, both the non-participating plaintiff dentist and the participating dentist receive $80 from defendant. Despite the co-payment waiver, says plaintiff, defendant pays out the same amount to all dentists.

This dispute about the co-payment waivers underscores defendant's legitimate desire to differentiate between participating and non-participating dentists. Participating dentists submit to defendant's quality control. Defendant claims that direct payment is the only way it has found to compensate participating dentists for their cooperation. This injunction will essentially award direct payment to *all* dentists, and eliminate defendant's main method of enlisting participating dentists.

Defendant's valid concerns about "overstated" fees and the loss of its direct payment recruitment device may be addressed by other means, e.g., a fee schedule which sets coverage amounts for various services. This injunction neither forces defendant to pay plaintiffs any more than it pays participating dentists, nor prohibits other incentives for participating dentists. The Court finds that the balance of hardships tips toward plaintiffs, who stand in the shoes of those beneficiaries currently unable to obtain dental services.

III. The question of whether ERISA prohibits defendant's refusal to honor the assignments is serious enough to require further litigation.

Because the balance of harm tips decidedly in their favor, plaintiffs are held to a lower standard of likelihood of success on the merits: the Court must grant the request for preliminary injunction if it finds at an "irreducible minimum" that plaintiffs

---

**3.** In order to combat "overstatement" of fees, defendant has requested that any injunction include a requirement that plaintiffs disclose their co-payment waivers. Such a requirement would undermine the effect of this injunction, because defendant would not consider the waived co-payment to be part of the fee actually charged. In the above example, the plaintiff dentist's disclosure of the co-payment waiver would lead defendant to pay $64 rather than $80 for the covered portion of the services. The beneficiary would not be able to fully assign his right, which is a right to payment of $80, not just $64.

have raised questions serious enough to require litigation. *Benda*, 584 F.2d at 315.

Although the statute is silent on the issue, plaintiffs have certainly raised a serious question as to whether ERISA applies to defendant's "no assignment" policy. When ERISA does not specifically address an issue of employee benefit law, the Court has a duty to develop the law in accordance with ERISA's underlying policies. *See Firestone Tire and Rubber Company, et al. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (courts are to develop a federal common law of rights and obligations under ERISA-regulated plans). No single sentence guides the Court's interpretation of the statute; the Court instead looks to "the provisions of the whole law, and to its object and policy." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987) (interpreting ERISA pre-emption clause).

ERISA governs two types of plans: employee pension benefit plans and employee welfare benefit plans. 29 U.S.C. §§ 1002(1), 1002(2), 1002(3). Defendant's dental insurance plans are "employee welfare benefit plans." Congress expressly stated that *pension* benefit plans may not be assigned or alienated, but did not address the question of assignment of *welfare* benefit plans. 29 U.S.C. § 1056(d)(1).

The issue of welfare benefit plan assignment has been partially addressed in earlier cases. The express bar on assignment of pension plans, and the lack of any mention of assignment of welfare plans, means that ERISA does not bar assignment of the right to payment for welfare plan services. *Mackey v. Lanier Collections Agency*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374 (9th Cir.1986). In fact, the assignment of the right to payment for welfare plan services results in precisely the benefit that ERISA is designed to protect. *Misic* at 1377. Such assignments

"protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan. Moreover, assignments permit a trust fund to obtain improved benefits for beneficiaries by bargaining with health care providers for better coverage and lower rates."

*Misic* at 1377; *see also, Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 n. 13 (5th Cir.1988) (if patients are unable to assign their rights to payment, health care providers may be discouraged from helping patients who cannot afford to pre-pay for services).

Defendant refuses to honor the assignments at issue, although they are good for beneficiaries and are not prohibited by ERISA. Does it necessarily follow that ERISA *requires* defendant to honor the assignments? The statute offers no express help on this issue, nor do the *Mackey* and *Misic* cases. The question is serious enough to require litigation, in light of ERISA's underlying policy to protect the interests of participants in employee benefit plans. *See* 29 U.S.C. § 1001(b).

*IV. Plaintiff is not required to post security for this preliminary injunction.*

The party opposing a preliminary injunction may request the moving party to post security pursuant to Fed.R.Civ.P. 65(c). Because defendant did not make such a request, and because under Fed.R.Civ.P. 65(c) the amount of any bond rests within this Court's discretion, plaintiff will not be required to post security. *See Clarkson, Co., Ltd. v. Shaheen*, 544 F.2d 624, 632 (2nd Cir.1976); *Orantes–Hernandez v. Smith*, 541 F.Supp. 351, 385 n. 42 (C.D.Cal. 1982) (the question whether and in what amount security should be posted is a matter left to the Court's discretion); *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir.1978) (trial court may elect to require no security at all).

SUMMARY

The significant possibility that certain beneficiaries are currently unable to obtain

dental treatment tips the balance of hardships in favor of plaintiffs. The question of whether ERISA prohibits defendant's no-assignment policy is serious enough to require litigation.

For the foregoing reasons, pending completion of trial in this matter or further order of this Court, defendant shall not refuse to honor any plan beneficiary's assignment of his or her right to payment to his or her treating dentist for any service rendered after December 31, 1990.

SO ORDERED.