The WASHINGTON HOSPITAL CENTER CORPORATION, as Assignee of Carl Spalding, Plaintiff,

v.

GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., Defendant.

Civ. A. No. 90–1393 (MB).

United States District Court, District of Columbia.

March 11, 1991.

Lawrence Edward Rubin, Rubin & Rubin, P.C., Silver Spring, Md., for plaintiff.

Charles J. Steele, Foley & Lardner, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BOUDIN, District Judge.

In this case plaintiff Washington Hospital Center ("Washington Hospital") seeks to recover payment of hospital bills incurred by Carl Spalding ("Spalding"), from defendant Group Hospitalization and Medical Services ("Blue Cross"). Washington Hospital sues as Spalding's assignee, asserting his rights as the insured under his Blue Cross policy. Blue Cross has moved for summary judgment on the ground that an anti-assignment clause in the policy defeats Washington Hospital's right to recover. For reasons explained below, the Court agrees that the anti-assignment clause is valid as applied in this case and summary judgment for Blue Cross is therefore warranted.

## I. THE FACTS

Defendant is a non-profit corporation that operates under its trade name, Blue Cross and Blue Shield of the National Capital Area, and provides prepaid health care benefits to subscribers in the vicinity. Blue Cross contracts with individual hospitals in the Washington area, which are then described as "participating hospitals." A participating hospital may agree, as Washington Hospital did in this case, to accept Blue Cross payment to the hospital as payment in full for covered services provided to Blue Cross subscribers. The Blue Cross contracts with participating hospitals contain formulas that determine the charges that a participating hospital can recover from Blue Cross for services provided to Blue Cross subscribers. The contracts typically contain other provisions to constrain hospital costs as well as the hospital charges imposed on subscribers and paid by Blue Cross. Washington Hospital has such an agreement with Blue Cross and is a participating hospital.

If a Blue Cross subscriber is cared for by a non-participating hospital, the situation is quite different. The hospital in such case has no contract with Blue Cross but can seek payment directly from the subscriber. The hospital is not constrained by Blue Cross cost controls and may bill the subscriber at the hospital's customary rates regardless of whether subscriber can be reimbursed in full by Blue Cross. In fact, under the policy involved in this case, Blue Cross will reimburse the subscriber for only 85 percent of the cost of reasonable and necessary care provided by the non-participating hospital. Presumably, Blue Cross subscribers are less likely to patronize a non-participating hospital where reimbursement is limited to 85 percent.

Carl Spalding, who is not a party in this case, was a Blue Cross subscriber under a group policy obtained by his employer, Jerry's Ford. Spalding's coverage under the policy became effective March 1, 1987. Between June 21, 1987, and July 15, 1987, Spalding was treated at Washington Hospital and incurred hospital bills of $57,690.75. It appears that administrative claims were made against Blue Cross by Washington Hospital for payment of those charges, but the claims were rejected on the ground that the hospital care in question related to a preexisting medical condition of Spalding. Under the group policy, coverage for a preexisting condition took effect 10 months after the subscriber came within the policy. Spalding's hospitalization occurred during the fourth and fifth month after he became a subscriber.

Although Washington Hospital could easily have brought suit against Blue Cross under the Washington Hospital–Blue Cross contract, Washington Hospital chose a different course. Washington Hospital first brought suit against Spalding in the District of Columbia Superior Court, obtaining (but presumably not collecting) a default judgment for the amount of the bill. It then brought this suit in this Court to recover from Blue Cross the amount of the outstanding bill as the "Assignee of Carl Spalding." *See* Caption of Complaint. As the basis for asserting Spalding's claim under the Blue Cross policy, Washington Hospital relied upon a form Spalding executed on admission to the hospital "assigning to the Hospital his insurance benefits under

[Blue Cross] Policy including his right to payment or to reimbursement of the Hospital's charges." Complaint at ¶ 8.

Blue Cross answered the complaint, asserting that the policy did not cover the condition for which Spalding was hospitalized. Blue Cross further asserted that Washington Hospital could not rely upon the assignment to it by Spalding of his policy claim against Blue Cross because the Blue Cross policy covering Spalding contained the following provision:

"The benefits of this Contract are personal to a Participant and may be received only by the Participant. The Corporation reserves the right to refuse to make payment directly to the Employee and to refuse to honor the assignment of any claim to any person or party." Group policy, p. 17.

Blue Cross then moved for summary judgment on the ground that Washington Hospital is not entitled to sue as Spalding's assignee. In response, Washington Hospital contends that the anti-assignment provision of the group policy, as applied to a participating hospital such as Washington Hospital, is not valid. The facts pertinent to this issue are not in dispute. Solely for purposes of this motion, it must be assumed that Washington Hospital might be able to prove at trial that Spalding's hospital bills were covered by the group policy.

## II. DISCUSSION

This litigation appears to be designed as a test case rather than merely a dispute about an individual hospital bill. Spalding could readily have sued Blue Cross in his own right under the group policy. Even more important, Washington Hospital could have sued in its own right under its own contract with Blue Cross. Washington Hospital states (and Blue Cross does not dispute) that the amount Washington Hospital seeks as Spalding's assignee does not exceed the amount that Washington

Hospital would be entitled to collect under its own contract, assuming Spalding is covered for this hospitalization. In sum, Washington Hospital is challenging, and Blue Cross is defending, the anti-assignment clause because the parties are concerned with the broader implications of the decision.

■ Analysis begins with the choice of law. The group policy was signed in the District of Columbia and both parties in this case treat the anti-assignment clause issue as governed by District of Columbia law. That assumption may well be incorrect. Jurisdiction in this Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, whose provisions permit a federal court action by a "participant" or "beneficiary" to recover upon a group policy such as this one. *See* 29 U.S.C. § 1132(a)(1).[1] Given the fact that the claim here is asserted under ERISA, it may well be that federal law, rather than local law, governs the validity of the anti-assignment clause. *See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 216 (9th Cir.1989); *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir.1986).

■ However, neither ERISA nor any ERISA case cited by the parties or located by this Court squarely addresses the validity of an anti-assignment clause in a case such as this one. District of Columbia statutes and precedent are said by the parties to be equally silent on the precise issue. Whether treated as a matter of "federal common law" under ERISA, *see Misic*, 789 F.2d at 1377, or District of Columbia common law, the issue is one of public policy. Consonantly the parties in this case direct much of their argument to the purported harms and benefits of anti-assignment clauses in group health policies.[2]

1. Whether or not an assignee under a valid assignment falls within the statutory categories of participant or beneficiary, there is a sufficiently colorable basis for such a claim to give this Court jurisdiction. *See Bell v. Hood*, 327

U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Kennedy v. Connecticut Avenue Life Ins. Co.*, 924 F.2d 698 (7th Cir.1991).

2. ERISA expressly forbids assignment of pension plan benefits, *see* 29 U.S.C. § 1056(d), but

■ Before turning to the cases involving health policies, two general objections to summary judgment offered by Washington Hospital should be mentioned and set aside. Washington Hospital argues that under local precedent, an anti-assignment clause is not effective "unless the restriction is phrased in expressed, precise language." *Bewley v. Miller,* 341 A.2d 428, 430 (D.C.1975) (cited with approval in *Flack v. Laster,* 417 A.2d 393, 399 (D.C.1980)). In the present case, the anti-assignment clause is clearly expressed and reasonably precise. Washington Hospital neither points to any ambiguity nor suggests why a clause reserving the right not to recognize assignments should be treated any differently than an absolute prohibition on assignments (which could, in any event, be waived in any particular instance).

■ As a second, related objection, Washington Hospital asserts that it was unaware of the anti-assignment clause. The Court assumes this is so for purposes of this opinion. The assignee, however, is ordinarily not a party to the agreement giving rise to the claim sought to be assigned. Washington Hospital points to no authority requiring knowledge on the part of the purported assignee nor does it give any reason why there should be a general requirement of knowledge. Washington Hospital also suggests that Spalding was unaware of the restriction, and it notes that a Blue Cross brochure describing policy features for subscribers does not mention the anti-assignment clause. Even assuming that an omission from the brochure

might create an estoppel in certain circumstances where Spalding could show reliance and prejudice, there has been no showing or even suggestion in this instance that Spalding either relied or was prejudiced. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (party opposing properly supported summary judgment motion must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial' " (quoting Fed. R.Civ.P. 56(e)).

■ The central question posed is whether this anti-assignment clause ought to be held void as a matter of public policy. Washington Hospital invokes by analogy the proposition that the assignment, after a loss, of a right to recover under an insurance contract is valid even though the insurance policy may contain a prohibition on assignment. *See* Plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Opposition") at 11 (citing 43 Am.Jur.2d, *Insurance* §§ 689–90; 46 C.J.S. *Insurance* §§ 1152 & 1190). Blue Cross counters with four state court decisions—from Colorado, Delaware, Kansas, and Nebraska—holding that anti-assignment clauses are effective to defeat a patient's assignment of claims when made to a non-participating hospital that treated the patient.[3] The rationale in these cases is that such anti-assignment clauses serve to

---

does not specifically forbid assignment of claims to health benefits. *See Misic,* 789 F.2d at 1376. From Congress' silence on the latter subject, it follows that assignments of health benefit claims are not barred; but such silence does not suggest an affirmative policy favoring assignments so strong as to invalidate otherwise valid anti-assignment clauses. *Cf. Hermann Hospital v. MEBA Med. & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988) (remanding to determine whether assignment is valid).

**3.** The cases are *Parrish v. Rocky Mountain Hosp. & Medical Servs. Co.,* 754 P.2d 1180 (Colo.Ct. App.1988); *Kent General Hosp., Inc. v. Blue Cross & Blue Shield of Delaware, Inc.,* 442 A.2d 1368 (Del.1982); *Augusta Med. Complex, Inc. v. Blue Cross of Kansas, Inc.,* 230 Kan. 361, 634

P.2d 1123 (1981); and *Obstetricians–Gynecologists, P.C. v. Blue Cross & Blue Shield of Nebraska,* 219 Neb. 199, 361 N.W.2d 550 (1985).

In an ERISA case not cited by the parties, *Davidowitz v. Delta Dental Plan,* 753 F.Supp. 304 (N.D.Cal.1990), another district court on a preliminary injunction looked tentatively in the opposite direction, although it is not clear whether the arguments that persuaded the four state courts were also made to the district court. In any event, the district court's concern in *Davidowitz* that non-participating health care providers be encouraged to provide health care to policy beneficiaries has little to do with this case, since Washington Hospital is already a participating provider and has ample incentive to serve Blue Cross subscribers.

constrain health care costs and deserve judicial recognition. To understand how invalidating the anti-assignment clauses might undercut these cost constraints requires a brief elaboration.

It is easy to see how health costs might be constrained by a contract, such as the one between Blue Cross and Washington Hospital, in which the hospital agrees to ceilings on the amount charged patients under the Blue Cross plan, agrees to accept payment by Blue Cross as full payment without billing the patient for any balance, and submits to other cost constraints. Patients under such group policies are given a strong incentive to utilize participating hospitals, where the insurer will pay for the entire cost of covered services (apart from any initial deductibles) instead of the lesser reimbursement available for use of non-participating hospitals. The participating hospital gets the benefit of an increased flow of patients, and rapid, certain and direct payments from the insurer. The insurer can attract subscribers with the promise of 100 percent coverage and, at the same time, can reduce its costs through the reimbursement schedule and any other cost constraints accepted by the participating hospital.

This mechanism depends on the willingness of hospitals to participate by subjecting themselves to the constraints already described. A hospital would have far less reason to participate if non-participating hospitals could garner the same advantages without subjecting themselves to the constraints. Under the contracts between insurer and the participating hospital, the participating hospital may recover the hospital charges directly from the insurer without the delay and risk involved in seeking reimbursement from patients. If a patient could obtain care from a non-participating hospital and assign it the patient's right to be reimbursed under a group policy, in the teeth of an anti-assignment clause, this direct payment inducement to become a participating hospital would be weakened or eliminated.

The state courts that have upheld the anti-assignment clauses in group health policies, *see supra* at note 3, appear to accept this rationale or something akin to it. Indeed, Washington Hospital expressly states it "agrees with [Blue Cross] that its anti-assignment clause encourages plan participation which in turn facilitates its cost-containment policy." Plaintiff's Opposition at 19. The existing state authorities, their straight-forward rationale, the absence of conflicting authorities, and Washington Hospital's own concession are enough to suggest that this Court should accept the anti-assignment clause as valid against non-participating hospitals.

Washington Hospital nevertheless attempts to distinguish this case by arguing that it *is* a participating hospital, claiming as Spalding's assignee an amount no greater than it would be entitled to if it sued in its own right under its contract with Blue Cross. No one has suggested that the Blue Cross defense of non-coverage is affected by Washington Hospital's desire to sue as assignee under the policy rather than in its own right under its contract with Blue Cross. On reading the briefs, the mystery posed was why Washington Hospital insisted on using the indirect route of suing as assignee.

The motive of Blue Cross in resisting the assignment also presented a puzzle. Blue Cross has argued that if Washington Hospital prevails in suing as assignee, the incentive for Washington Hospital to remain as a participating hospital could be diminished or eliminated and that other participating or non-participating hospitals might similarly find that their incentive to participate has been diminished or eliminated. It is not altogether easy to understand why this should be so if Washington Hospital could sue as assignee *only* as long as it remained a participating hospital and could collect as assignee no more than it could collect as a participating hospital suing in its own right under its own contract with Blue Cross. What Blue Cross may fear is that a decision invalidating the anti-assignment clause in the circumstances of this case might be stretched to embrace other cases where it might improve the hospital's chance or level of recovery.

At oral argument, some light was shed on more immediate motivations. Pressed as to why it preferred to sue as assignee, Washington Hospital avowed at the oral argument that the clearest advantage to it from suing under ERISA was the prospect of attorneys' fees provided to prevailing litigants suing under that statute.[4] Washington Hospital also suggested that the standard of judicial review under ERISA might be more favorable to it on the coverage issue, but this Court has found no reason to believe that this is so. Finally, ERISA supplies plaintiffs with a federal forum, whereas a contract claim between Blue Cross and Washington Hospital would otherwise be heard in Superior Court.

Thus, in the end, the issue posed in this case is a narrow one and neither side has offered conclusive arguments. Washington Hospital has distinguished the state cases without offering any clear policy argument for overriding the anti-assignment clause. Blue Cross' concern with maintaining incentives for participating hospitals is valid, but that concern ought not be threatened by a holding that invalidated the anti-assignment clause only where the assignee was a participating hospital. There is no showing that this case directly involves the interest of the subscriber under ERISA or the broader interests in health care availability and cost containment. The case is difficult to decide in part because so little public policy weight appears to rest on either side of the scale.[5]

What is decisive for the Court is the context of Washington Hospital's claim. Blue Cross and Washington Hospital have, as sophisticated bargainers, negotiated an elaborate agreement governing the terms on which Blue Cross would reimburse Washington Hospital for providing care for Blue Cross subscribers. Nowhere in that agreement is there a provision for attor-

neys' fees for litigation resolving disputed claims between the parties. If the parties wish to contract on this issue, nothing could be easier. Yet the only demonstrated effect of invalidating the anti-assignment clause, aside from inadvertently providing a federal forum to assignees, is to insert a potential opportunity for attorneys' fees into this carefully constructed *contractual* relationship. That kind of tinkering with the balance struck by the parties is not a result toward which public policy should aim.

The Court has been given no reason to think that Congress had the present problem of assignees in mind when it provided in ERISA that "participants" and "beneficiaries" might collect attorneys' fees. If a hospital holding a *valid* assignment seeks attorneys' fees as a "participant" or "beneficiary," the outcome may well turn on the accident of legislative drafting rather than on any very clear policy choice by Congress. However this may be, ERISA does not on its face appear to embody any policy in favor of attorneys' fees for assignees so strong as to invalidate the anti-assignment clause. Without a valid assignment, Washington Hospital has no claim under ERISA.

In sum, Blue Cross has explicitly reserved its right to refuse to honor assignments of subscriber claims under the group health policy involved in this case. That reservation has not been shown to be contrary to public policy when applied to participating hospital assignees such as Washington Hospital. Since Washington Hospital has claimed against Blue Cross solely on the ground that Washington Hospital is an assignee of Spalding, its suit must fail.

## III. CONCLUSION

In accordance with this Memorandum Opinion, an Order will be entered granting

---

4. Under 29 U.S.C. § 1132(g)(1), a district court has discretion to award attorney's fees and costs to either party in an ERISA action brought by a participant, beneficiary or fiduciary.

5. In principle, the burden rests upon the party seeking to invalidate an explicit contractual provision to show that enforcement of the provision would be contrary to public policy. *See* 4

*Corbin on Contracts* § 872 (1951). Yet in the case of anti-assignment clauses, the general presumption that parties should be free to contract as they choose may be somewhat weakened by concerns with free alienability of rights. In the Court's view, these general precepts are not decisive in this case.

defendant's motion for summary judgment and dismissing this case.