**Kester CROSSE, individually and on behalf of all others similarly situated, Plaintiffs Below, Appellants,**

v.

**BCBSD, INC., Defendant Below, Appellee.**

No. 10,2003.

Supreme Court of Delaware.

Submitted: July 8, 2003.
Decided: Sept. 22, 2003.
Reargument Denied Nov. 13, 2003.

---

**28.** *Feddiman,* 558 A.2d at 290; *Weber,* 547 A.2d at 959.

John M. Murray, of the Law Office of John M. Murray, Nassau, DE; Eugene H. Bayard, of Wilson, Halbrook & Bayard, Georgetown, DE; J. Brendan O'Neill, of the Law Office of Brendan O'Neill, Wilmington, DE, for Appellants.

Thomas P. Preston, and John G. Harris, of Blank Rome, L.L.P., Wilmington, DE, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and STEELE, Justices.

VEASEY, Chief Justice:

■ In this appeal, we consider for the first time whether a non-profit health insurance company owes fiduciary duties to its plan participants.[1] Like other typi-

---

1. At the outset, we note that all of the members of the Court have health care insurance provided by Blue Cross Blue Shield Delaware (BCBSD). It is impracticable, therefore, for any member of the Court to enter a recusal. Thus, the Court has invoked the rule of necessity as enunciated in *Nellius v. Stiftel*, 402 A.2d 359, 360 (Del.1978) to enable the mem-

cal insurance contracts, no fiduciary duty exists because the interests of the plan participants and the insurer are not perfectly aligned. The relationship between the insurer and each insured, even in the case of a not-for-profit entity, is purely contractual. Accordingly, we affirm the judgment of the Court of Chancery dismissing the fiduciary duty claim.

The Court of Chancery also properly found that it lacked jurisdiction over plaintiffs' other claims in which no proper basis for equitable relief was set forth. We affirm the judgment of the Court of Chancery dismissing those additional claims and transferring them to the Superior Court.

### Facts

BCBSD is a non-stock corporation organized under the Delaware General Corporation Law. BCBSD is a health insurance company. It writes indemnity and managed care products for insured subscribers. Under Title 18 of the Delaware Code, BCBSD is regulated as a "health service corporation." Crosse, and the members of the purported class on whose behalf he brings this action, are various insured subscribers of BCBSD.

### Procedural History

Crosse filed this purported class action against BCBSD in the Court of Chancery, alleging that BCBSD: (1) has received from health care providers rebates and other price reductions that it has not passed on to its customers, thus violating its agreement to cover 80% of the customers' medical expenses; (2) has accumulated profits and a fifty-million dollar surplus, in violation of its non-profit status; and (3) owed and breached a fiduciary duty to its

insureds by failing to pass on the rebates and accumulated surplus profits it has received.

The Court of Chancery dismissed the fiduciary claim for failure to state a claim upon which relief can be granted, finding that BCBSD did not owe a fiduciary duty to its plan participants. The court also dismissed the remainder of the complaint for lack of jurisdiction, finding that the remaining claims could be resolved by awarding damages and should have been brought in a court of law rather than a court of equity. The court then transferred those claims to the Superior Court.

### Issues on Appeal

On appeal, Crosse asserts two grounds for reversal. First, he contends that BCBSD does, in fact, owe a fiduciary duty to its plan participants. Second, he argues that the Court of Chancery erred by dismissing the remainder of his claims on jurisdictional grounds. We will review each issue in turn.

### Fiduciary Duty

■ Crosse contends that BCBSD owes a fiduciary duty to its plan participants. BCBSD argues that no such relationship exists. The Court of Chancery agreed with BCBSD and determined that the relationship between the insureds and BCBSD is defined solely by contract and is not different from any other insurance contract. We review de novo the application of law by the Court of Chancery to determine whether BCBSD's obligations to its participants are fiduciary in nature.[2]

■ Whether BCBSD, as a non-profit health services corporation, owed a fiduciary duty to its plan participants is an issue

---

bers of the Court to hear this case without regard to any disqualifications that may exist due to their coverage by BCBSD.

2. *See Corrado Bros. v. Twin City Fire Ins. Co.,* 562 A.2d 1188, 1193 (Del.1989).

of first impression. This Court has held that "the concept of a fiduciary relationship, which derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal in which the fiduciary is required to pursue solely the interests of the beneficiary in the property."[3] Using this standard, we have concluded that a typical insurance contract does not create fiduciary duties because the interests of the plan participants and those of BCBSD are not perfectly aligned.[4] For example, the settlement of an insurance claim may benefit the insurer by limiting its litigation costs while prejudicing the insured, who might prefer not to be charged with any settlement award because it may result in higher premiums.[5]

The question in this case is whether there is such a sufficient "clash of interests" between BCBSD and its participants that the legal relationship is purely a contractual one rather than a fiduciary one. In our view, BCBSD is not a fiduciary under this standard, and the legal relationship is purely contractual.

BCBSD's interests are theoretically aligned with plan participants to the extent BCBSD is charged with negotiating the best healthcare package from hospitals and physicians at the most affordable price. In *Kent General Hospital v. Blue Cross and Blue Shield of Delaware*, this Court upheld BCBSD's power under its contract with plan participants to refuse to honor assignments by its customers of their rights to reimbursement of medical expenses when those assignments were to hospitals with whom BCBSD does not have a service-provider contract.[6] By con-

tract, BCBSD has exclusive bargaining power for its subscribers. If subscribers seek care outside of that furnished by covered providers, they cannot (without written approval) assign their rights to repayment of healthcare providers with whom BCBSD does not have an arrangement.[7]

As a bargaining entity for insureds, BCBSD's interests are theoretically aligned with those of its plan participants to the extent that the common goal is to provide the best healthcare for the least cost. Crosse points out that BCBSD's interests do not depart from this goal to pursue its own interests in charging a fee as an intermediary because BCBSD is a non-profit health services corporation under Title 18 of the Delaware Code.

Despite this aspect of BCBSD's relationship with its participants, however, BCBSD's interests depart from those of its plan participants in other ways. BCBSD, like any insurer, often denies benefits or requires higher co-payments for some medical services in order to keep costs down, even though the denial of benefits or higher lower co-payments are not in the interests of the insureds. The insureds' rights are provided for in their contracts. Thus, the decision to pay or not to pay a certain claim or (as relevant to this case) to pass on discounts to customers or to withhold the discount, may benefit BCBSD while disadvantaging the individual plan participants.

Crosse relies on the non-profit status of BCBSD to establish, ipso facto, a fiduciary relationship. We take Crosse's argument to mean that when BCBSD makes any decision, it must do so for the benefit of its

---

**3.** *Id.* at 1192.

**4.** *Id.*

**5.** *Id.*

**6.** 442 A.2d 1368, 1372 (Del.1982).

**7.** *Id.* at 1370.

customers because, by definition, it cannot maintain a profit. The problem with this characterization of BCBSD is that it fails to account for the fact that, in the aggregate, costs are kept down by denying excessive individual claims when such denials may benefit other plan participants in the form of lower premiums. The interests of a given insured may diverge from BCBSD's interests, as a representative of all plan participants, if a given expenditure exceeds a cost deemed reasonable by BCBSD. To the extent that BCBSD owes special duties as a "non-profit" entity, those duties are owed to the State, through regulation by the Insurance Commissioner. The State is providing the tax benefit that makes the non-profit status advantageous. The non-profit status of BCBSD is irrelevant from the standpoint of the insured and his or her contract.

Crosse's argument is simply this: if BCBSD is a non-profit organization, it must be operating solely for the plan participants because it cannot generate a profit for itself. BCBSD's non-profit status, however, does not alter the insured-insurer relationship and it does not create a fiduciary relationship. BCBSD must engage in the same cost-effective economic decisions as any other insurance entity, regardless of how each entity uses its surplus profit or capital. Thus, the entity, whether it is a non-profit or for-profit entity, makes the same decisions and has the same diverging interests as those that pertain to any insurer-insured relationship. Accordingly, BCBSD owed no fiduciary duties to the plan participants,[8] and the fiduciary duty claim was properly dismissed by the Court of Chancery.

### Other Grounds for Equitable Relief

■ Crosse also contends that, even if BCBSD owes no fiduciary duties to him and the other plan participants, the complaint sets forth other equitable claims that permit the Court of Chancery to hear the case. BCBSD argues that no ground for equitable relief exists. We review de novo the finding of the Court of Chancery that it lacked jurisdiction to hear Crosse's claims.

■ Crosse first argues that his unjust enrichment claim permits the Court of Chancery to retain jurisdiction in this case despite the statute that precludes Chancery jurisdiction in certain cases.[9] This claim, however, is an off-the-contract theory of recovery that accompanies the breach of contract allegations. These off-the-contract theories of recovery are legal,

8. Crosse also relies on· federal precedent to suggest that BCBSD owes fiduciary duties to Crosse, but this argument is inapposite. The federal decisions pertain to rights under the Employee Retirement Income Security Act of 1974 (ERISA). Congress specifically imposed fiduciary duties on health insurance companies governed by ERISA. *See* 29 U.S.C.A. § 1002(21)(A)(iii) (noting fiduciary duties attach to health care organizations with discretionary authority over the management or the finances of the plan). Because the BCBSD plan at issue here is not governed by ERISA, the federal cases are unhelpful. Were BCBSD an entity governed by ERISA, federal law would preempt state law. *See generally Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 107

S.Ct. 1549, 95 L.Ed.2d 39 (1987). Federal preemption likely explains why courts in other state jurisdictions have not addressed this issue. Similarly, Crosse's reliance on statements made by Congressmen that describe the health care insurer as a fiduciary is unavailing because those statements are irrelevant to a resolution of this issue of state law.

9. The applicable statute provides: "The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State." Del. Code Ann. tit. 10, § 342 (2001).

not equitable claims.[10] The Superior Court typically has jurisdiction to award this form of relief when it cannot hold the parties to a formal agreement but determines that the aggrieved party is entitled to relief for a benefit conferred on the other party. Crosse's argument is tantamount to an assertion that the Superior Court would not be permitted to hear any valid contract action that has an unjust enrichment claim as an alternative theory for recovery.

■ Crosse also asserts a claim for relief under the Consumer Fraud Act.[11] Crosse has not alleged facts sufficient to invoke injunctive relief, nor has he argued that damages cannot remedy his alleged losses or those of the class. As this Court has noted, damages are the "traditional remedy" for violations of the Consumer Fraud Act.[12]

■ Crosse's claim based on the provisions of the Act prohibiting deceptive trade practices is inapplicable here. Crosse is a consumer, not a competitor of BCBSD. As such, he does not have a business interest in the alleged unlawful conduct and, therefore, does not have standing to bring a deceptive trade practice claim.[13]

■ Crosse also argues that the Court of Chancery has jurisdiction over this case because he asks that court to pierce the corporate veil and hold the directors of BCBSD directly liable for the alleged mismanagement. To state a "veil-piercing claim," the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors.[14] Crosse has failed to allege any facts to support such an inference. Crosse also contends that BCBSD has breached its non-profit status by accumulating a surplus of over $50 million. A veil-piercing claim is usually invoked when the shell corporate entity is insolvent and the plaintiff wishes to reach the personal assets of the corporation's stockholders or alter egos. That contention does not apply in this case.

### *Conclusion*

We hold that BCBSD, as an insurer, does not owe a fiduciary duty to its plan participants. We also hold that Crosse and the other plan participants failed to state any claim on which equitable relief can be granted. Accordingly, the judgment of the Court of Chancery is AFFIRMED.

---

10. *See* Wolfe & Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, ¶ 12–7[b], 12–76.

11. Title 6, Section 2523 authorizes the Court of Chancery to issue injunctions for consumer fraud violations only where it is necessary to prevent unlawful trade practices or where "necessary to restore to any person in interest any money or property...." DEL. CODE ANN. tit. 6, § 2523 (2001).

12. *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del.1993).

13. *See id.* (noting that the Deceptive Trade Practices Act remedies wrongs in the "horizontal relationship" among sellers and producers as opposed to the "vertical relationship" between consumers and producers, which is addressed by the Consumer Fraud Act).

14. *See Wallace ex. rel. Cencom Cable Income Partners II v. Wood*, 752 A.2d 1175, 1183–85 (Del.Ch.1999).