# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID TIKIOB, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | C.A. No. 2020-0027-PWG |
| v. | ) | |
| | ) | |
| SUE TIKIOB-CARLSON, | ) | |
| RICHARD DOWNER TIKIOB, SR., and | ) | |
| RICHARD DOWNER TIKIOB, JR., | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MASTER'S REPORT</u>

| | |
|---|---|
| Date Submitted: | August 6, 2021 |
| Draft Report: | September 10, 2021 |
| Final Report: | September 22, 2021 |

Adam C. Gerber, Esquire, BENTON LYNN LAW, P.A., Dover, Delaware, *attorney for Petitioner*

David J. Ferry, Jr., Esquire and Brian J. Ferry, Esquire, FERRY & JOSEPH. P.A., Wilmington, Delaware, *attorneys for Respondent, Sue Tikiob-Carlson*

Stephen A. Spence, Esquire, BAIRD MANDALAS BROCKSTEDT, LLC, Lewes, Delaware, *attorney for Respondent, Richard Downer Tikiob, Sr.*

Richard Downer Tikiob, Jr., 41 Maryland Avenue, Rehoboth Beach, Delaware 19971, *Pro Se*

**GRIFFIN, Master**

Pending before me is a motion for summary judgment on a petition brought by a son claiming his sister violated her duties as their father's agent under a durable power of attorney and seeking an accounting of her transactions while acting as agent and her revocation as agent, among other relief. I previously denied the sister's motion to dismiss and ordered the sister join another sibling and their father to the action.[1] On that motion to dismiss, I found that the son sought relief that is generally allowable under the Durable Personal Power of Attorney Act ("DPPAA").[2] Now that the factual record is more developed, I find that there is not specific evidence to show the sister breached a duty under the DPPAA and recommend the Court grant the motion for summary judgment. This is a final report.[3]

## I. FACTUAL BACKGROUND

Richard D. Tikiob, Sr. ("Richard Sr.") has three living children – Respondents Sue Tikiob-Carlson ("Sue"), his daughter, and Richard D. Tikiob Jr. ("Richard Jr."), his son, and a second son, Petitioner David Tikiob ("David").[4] Richard Sr. has dementia and is not currently able to properly manage and care for his property.[5]

---

[1] Docket Item ("D.I.") 17.

[2] *Id.*, at 7-10.

[3] This report makes the same substantive findings and recommendations as my September 10, 2021 draft report, to which no exceptions were filed.

[4] D.I. 22, ¶ 8. I use first names only in pursuit of clarity and intend no disrespect or familiarity.

[5] D.I. 42, Ex. H [hereinafter "Sue Dep. Tr."] 9:1-9; D.I. 22, ¶15; D.I. 28, ¶ 15; D.I. 29, ¶ 15; D.I. 37, ¶ 15. David testified that he discussed financial matters with Richard Sr., when

Prior to October of 2019, he lived in his long-time home at 1010 Scarborough Avenue, Rehoboth Beach Delaware, and was assisted by home health caretakers.[6] Richard Sr. currently resides in an assisted living and memory care facility, Brandywine Living at Seaside Pointe ("Brandywine facility"), in Rehoboth Beach, Delaware.[7]

On July 25, 2013, Richard Sr. executed a durable power of attorney (the "POA") appointing Sue as his agent.[8] Prior to this, Richard Sr. had executed a personal power of attorney that appointed his other daughter Leslie Ballinger as agent.[9] Richard Sr. executed, on May 27, 2011, a Health Care Power of Attorney in favor of his now-deceased wife, Ann Draper Tikiob, with Leslie Ballinger and Sue as successor agents.[10] David is not named as agent under any of these documents and has not been named by Richard Sr. in any fiduciary capacity.[11] In this action, David has not disputed the validity of the POA.[12]

---

he was "still with it . . . four or five years ago." D.I. 42, Ex. J [hereinafter "David Dep. Tr."] 35:22-36:3.

[6] Sue Dep. Tr. 11:16-23; D.I. 22, ¶ 15.

[7] D.I. 22, at ¶ 4; Sue Dep. Tr. 9:10-15.

[8] D.I. 22, Ex. A. Richard Jr. was appointed as first alternate agent. *Id.*

[9] *See* Sue Dep. Tr. 13:6-18. Leslie Ballinger is now deceased. *See* Sue Dep. Tr. 15:21; David Dep. Tr. 14:12-14.

[10] D.I. 42, Ex. G Ann Tikiob died on October 20, 2012. Sue Dep. Tr. 39:24-40:2.

[11] *See* D.I. 22, Ex. A; D.I. 44, Ex. G; David Dep. Tr. 66:13-18.

[12] David Dep. Tr. 66:8-12.

The POA grants Sue, as agent, broad authority "to transact all [Richard Sr.'s] business and manage all [his] property, affairs, and interests as fully and completely as [he himself] might do if personally present and to do any and all acts and things which [Sue] shall deem useful, necessary, or proper …"[13] Specifically, the POA authorizes Sue to buy and sell real and personal property on behalf of Richard Sr.,[14] to make gifts not in excess of $13,000 annually to family and friends,[15] to transfer any property into his revocable trust, or create a trust for his benefit,[16] and to employ others such as accountants and attorneys to assist in managing Richard Sr.'s affairs.[17]

Sue began managing Richard Sr.'s financial matters in 2014 by paying some bills and writing checks.[18] In 2015, Sue took over the management of Richard Sr.'s real estate properties, which are primarily seasonal vacation rentals.[19] Sue currently resides in California but lived in New York at the time this action was filed.[20] When she lived in New York, she would travel to Rehoboth Beach to see Richard Sr. 12 to

---

[13] D.I. 22, Ex. A, ¶ 34.

[14] *Id.*, ¶¶ 5, 14.

[15] *Id.*, ¶ 27.

[16] *Id.*, ¶¶ 29, 30.

[17] *Id.*, ¶ 20.

[18] Sue Dep. Tr. 14:15-20.

[19] *Id.*, 17:20-23.

[20] *Id.*, 5:15-17; 7:10-16.

20 times per year, at least once per month.[21] Due to her move and the COVID-19 pandemic, Sue has travelled to Rehoboth less frequently, but she generally speaks with Richard Sr.'s caregivers over FaceTime, and can have face-to-face time with him, around once a week.[22]

When Sue began managing Richard Sr.'s real estate, he owned nine properties in the Rehoboth Beach area, including his home and vacation rental properties.[23] She has since sold two of the properties, which were both vacant lots.[24] Richard Jr. is a real estate agent, assists Sue in the management of the vacation rental properties, and performs routine maintenance and repair tasks for the properties.[25] In addition to receiving reduced rent on an apartment owned by Richard Sr., Richard Jr. is paid by Sue for various expenses related to those tasks.[26]

After Richard Sr. relocated to the Brandywine facility, Sue and others discarded accumulated "junk," and relocated valuables in Richard Sr.'s home.[27] Sue has also, in her management of Richard Sr.'s financial affairs, utilized and

---

[21] *Id.*, 7:24-8:6.

[22] *Id.*, 8:14-9:3.

[23] *Id.*, 18:6-12; 20:15-18; 60:17-21.

[24] *Id.*, 18:19-21.

[25] *Id.*,19:18-19; 30:20-22.

[26] *Id.*, 29:24-31:13; D.I. 52, Ex A, ¶ 9.

[27] Valuables were either placed into storage or into certain locations in the home. Sue Dep. Tr., 20:24-21:8; 57:18-58:10.

restructured various assets owned by Richard Sr. to fund his medical care and other expenses.[28]

## II. PROCEDURAL BACKGROUND

On January 14, 2020, David filed the Petition to Strike the POA under 12 *Del. C.* §49A-116 of the DPPAA, claiming that Sue engaged in self-dealing and acted in bad faith by squandering Richard Sr.'s monies on gifts to family and friends and mismanaging Richard Sr.'s properties.[29] He seeks to compel Sue to account for transactions undertaken since she became Richard Sr.'s agent, and to refrain from "exercising authority for the purpose of maintaining her own inheritance."[30] He also asks the Court to terminate Sue's power of attorney and establish a new power of attorney for Richard Sr.[31]

Sue filed a motion to dismiss, which I denied on July 17, 2020, and I ordered the joinder of Richard Sr. and Richard Jr. to this action as necessary interested parties.[32] David filed his amended petition ("Amended Petition") on October 23,

---

[28] *See* D.I 52, Ex. A, ¶ 3; Sue Dep. Tr. 25:10-22.

[29] D.I. 1., ¶ 17; D.I. 22, ¶ 17.

[30] *Id.*, at 5.

[31] *Id.*

[32] D.I. 17.

2020.[33]  Sue filed her Answer on February 1, 2021.[34]  Richard Jr. filed his Answer on February 1, 2021, and Richard Sr. filed his Answer on April 14, 2021.[35]

Sue filed this Motion for Summary Judgment ("Motion") on June 11, 2021, requesting dismissal of the Amended Petition because she claims there is no evidence she breached her duties as an agent under the DPPAA and she provided legal and financial documents to David.[36]  David filed his response in opposition on July 12, 2021, arguing that evidence suggests Sue breached her fiduciary duties.[37]  Sue's August 6, 2021 reply brief reiterates her argument that the evidence does not show she breached a fiduciary duty.[38]

## III.  STANDARD OF REVIEW

Under Court of Chancery Rule 56, the Court grants a motion for summary judgment when "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[39]  The moving party bears the burden of demonstrating that no material issues of fact are in dispute and

---

[33] D.I. 22.

[34] D.I. 29.

[35] D.I. 28: D.I. 37.

[36] D.I. 42.

[37] D.I. 44.

[38] D.I. 52.

[39] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd* 692 A.2d 411 (Del. 1997) (TABLE).

that it is entitled to judgment as a matter of law.[40] Evidence must be viewed "in the light most favorable to the non-moving party."[41] "[O]nce the moving party has satisfied its initial burden of demonstrating the absence of a material factual dispute, the burden shifts to the nonmovant to present some specific, admissible evidence that there is a genuine issue of fact for a trial." [42] "To withstand a motion for summary judgment, the non-moving party must demonstrate, based upon submitted evidence, 'a triable issue of material fact.'"[43] Mere allegations or denials in a pleading, unless backed up by specific facts contained in admissible evidence, are insufficient to show that there is a genuine issue for trial.[44]

---

[40] *Wagamon*, 2012 WL 1388847, at \*2; *Ludeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at \*5 (Del. Super. Aug. 31, 2006).

[41] *Williams v. Geier*, 671 A.2d 1368, 1388-89 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).

[42] *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 356 (Del. Ch. 2008) (internal quotation marks and citations omitted); *see also* Ct. Ch. R. 56(e); *In re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 WL 3165613, at \*9 (Del. Ch. Oct. 2, 2009) ("[S]ummary judgment is appropriate where [the non-moving] party fails to make a sufficient showing on any essential element of its case.").

[43] *Frank v. Elgamal*, 2014 WL 957550, at \*17 (Del. Ch. Mar. 10, 2014) (quoting *In re Gaylord Container Corp. S'holders Litig.,* 753 A.2d 462, 473 (Del. Ch. 2000)); *see also Deloitte LLP v. Flanagan*, 2009 WL 5200657, at \*3 (Del. Ch. Dec. 29, 2009) ("It is not enough that the nonmoving party put forward a mere scintilla of evidence; there must be enough evidence that a rational finder of fact could find some material fact that would favor the nonmoving party in a determinative way, drawing all inferences in favor of the nonmoving party.").

[44] *See, e.g.*, *Feinberg v. Makhson*, 407 A.2d 201, 203 (Del. 1979) ("It is settled law in Delaware that where a moving party's affidavits in support of a Rule 56 motion negate the opposing party's pleadings, the opposing party must submit countervailing evidence or affidavits or judgment may be granted."); *Wagamon*, 2012 WL 1388847, at \*2; *Geier v.*

## IV. ANALYSIS

David claims that Sue breached her fiduciary duties under the POA and engaged in self-dealing, and requests that the Court impose various remedies under the DPPAA.[45] Viewing the evidence in the light most favorable to David, I consider whether Sue has shown there are no material factual disputes and that she is entitled to judgment as a matter of law. If Sue meets her burden, then David must demonstrate, based upon submitted evidence, that there is a triable issue of material fact. In other words, David must show evidence of acts by Sue as agent for Richard Sr. that constitute a breach under the DPPAA, not just conclusory allegations.

Under the DPPAA, certain persons, including the child of a principal, are authorized to petition the Court of Chancery to impose specified types of relief, including compelling an agent to provide an accounting, modifying, suspending or revoking an agent's powers, or determining an agent's liability for violating her duties under 12 *Del. C.* §49A-114.[46] While the DPPAA does not explicitly state what entitles the petitioner to relief under Section 49A-116, I interpret this statute as

---

*Meade*, 2004 WL 243033, at *8 (Del. Ch. Jan. 30, 2004); *Wells Fargo Bank, N.A. v. Williford*, 2011 WL 5822630, at *2 (Del. Super. Nov. 17, 2011).

[45] *See* D.I. 1; D.I. 22; D.I. 17, at 7-8 ("The relief sought by David, even if stated in an 'inartful manner,' is generally allowable under 12 *Del. C.* § 49A-116.").

[46] 12 *Del. C.* §§49A-116(a), (b). The DPPAA further provides that nothing in Section 49A-116 "shall preclude or diminish the Court's authority . . . to order other judicial relief, in order to grant appropriate relief upon review of a personal power of attorney or an agent's conduct with respect to a personal power of attorney." 12 *Del. C.* §49A-116(d).

providing remedies should the petitioner prove a breach of a fiduciary duty specified under the DPPAA.[47] It is well settled under Delaware law that "[t]o establish liability for the breach of a fiduciary duty, a plaintiff must demonstrate that the defendant owed her a fiduciary duty and that the defendant breached it."[48] As agent under a durable personal power of attorney, Sue owed the duties enumerated in Section 49A-114.[49] Those duties include, among others: (1) the duty to act "in accordance with the principal's reasonable expectations" and "in the principal's best interest;"[50] (2) the duty to act "in good faith,"[51] defined as "honesty in fact;"[52] (3) to act "only within the scope of authority granted in the personal power of attorney;"[53]

---

[47] *See Parkhurst v. Nalley*, C.A. No. 11930-VCZ (Del. Ch. Sept. 13, 2017) (Glasscock, V.C.) (Transcript Ruling at 45:23-24) ("That is something to which this statute is silent. And I think, to fill that void, I look at the common law.") (interpreting 12 *Del. C.* §49-116(c)).

[48] *See Est. of Eller v. Barton*, 31 A.3d 895, 897 (Del. 2011) (applying fiduciary duties in the context of a real estate agent).

[49] 12 *Del. C.* §49A-114.

[50] 12 *Del. C.* §49A-114(a)(1).

[51] 12 *Del. C.* §49A-114(a)(2).

[52] 12 *Del. C.* §49A-102(5).

[53] 12 *Del. C.* §49A-114(a)(3).

(4) to act loyally;[54] (5) to not create conflicts of interest;[55] (6) to act "with the care, competence, and diligence ordinarily exercised by agents in similar circumstances;"[56] and (7) to keep records "of all receipts, disbursements, and transactions made on behalf of the principal."[57]

In the Motion, Sue contends that there is no factual support for David's allegations that Sue breached her fiduciary duty under the DPPAA or to support the termination of the POA, and she has provided all necessary legal and financial documents to David. She claims no further accounting is necessary and she is entitled to judgment as a matter of law.[58] In response, David identifies evidence that he asserts shows Sue's breach and argues that this evidence is sufficient to show that a further accounting is necessary to uncover mismanagement or other improper

---

[54] 12 *Del. C.* §49A-114(b)(1). This duty of loyalty is qualified by the DPPAA, which provides that "[a]n agent that acts with care, competence, and diligence for the best interest of the principal is not liable solely because the agent also benefits from the act or has an individual or conflicting interest in relation to the property or affairs of the principal." 12 *Del. C.* §49A-114(d). While the concept of fiduciary relationships requires the fiduciary "to pursue solely the interests of the beneficiary," *e.g. Crosse v. BCBSD, Inc.*, 836 A.2d 492, 495 (Del. 2003), the DPPAA and the Uniform Power of Attorney Act of 2006, upon which the DPPAA is based, explicitly modifies this fiduciary duty to require only that the agent act in the "best interest of the principal." Unif. Personal Power of Atty. Act §116, cmt. (2006). Under this statute, "loyalty to the principal can be compatible with an incidental benefit to the agent." *Id*.

[55] 12 *Del. C.* §49A-114(b)(2).

[56] 12 *Del. C.* §49A-114(b)(3).

[57] 12 *Del. C.* §49A-114(b)(4).

[58] D.I. 42.

conduct.[59]  I analyze each transaction identified by David as a breach of fiduciary duties by Sue in turn.

A. *Sue's Alleged Failure to Disclose Records from County Bank*

David contends that Sue engaged in a pattern of withholding various records related to Richard Sr.'s accounts in County Bank from him.[60]  He points to Sue's failure to turn over certain bank statements before the discovery deadline in this matter.[61]  Sue does not dispute this but asserts that any delay was caused by the bank and that she provided the documents to David as soon as they were made available.[62]

Since there is no factual dispute on this issue, I turn to whether this failure to disclose by the discovery deadline shows, as David argues, "a pattern of what can only be considered a breach of fiduciary duty."[63]  I conclude, as a matter of law, that it does not.  Under the DPPAA, an agent has a duty to disclose receipts, disbursements and transactions conducted on behalf of the principal if requested to do so by the principal, a fiduciary of the principal, or a court order.[64]  David does

---

[59] D.I. 44.

[60] *Id.*, at 3-4.

[61] *Id.*, at 4.

[62] D.I. 52, at 6-7; *Id.*, Ex. A., ¶ 2.

[63] D.I. 44, at 4.  This argument seems more directed toward a discovery violation that could have been addressed through a motion to compel, if needed, than toward a breach of fiduciary duty.

[64] 12 *Del. C.* §49A-114(g).

not fall within the list of persons who may request an accounting from Sue under the DPPAA.[65]  Nothing in the POA instructs Sue to make an accounting to her siblings,[66] and there was no court order requiring that Sue make such an accounting at the time these records were disclosed.  Accordingly, Sue did not owe David a duty to disclose these records under the DPPAA, so there is no evidence of a genuine issue for trial related to Sue's failure to disclose records.[67]

Further, Sue, as agent, owed the duty to act "with the care, competence, and diligence ordinarily exercised by agents in similar circumstances"[68] and to keep records "of all receipts, disbursements, and transactions made on behalf of the principal."[69]  David does not argue that Sue has acted without care in keeping and maintaining records or that she has not kept records, but merely asserts that Sue has

---

[65] *Id.*

[66] *See* D.I. 22, Ex. A.

[67] Sue has produced over 2,200 pages of records through discovery to David and two depositions have been taken, among other discovery. *See, e.g.,* D.I. 42, at 9, n.1; D.I. 42, Exs. H, J; D.I. 36, D.I. 32.  Assuming, *arguendo*, that Sue has breached a duty she owes under the DPPAA and an accounting may be a possible remedy, David has not identified documents or transactions that Sue has not now produced to him through discovery.  He merely points to certain events and argues that they "beg[] the question of what additional information [Sue] may be withholding." D.I. 44, at 10.  Sue responds that she "has provided David with every relevant document in her possession." D.I. 42, at 9, n. 1.  There is no evidence that any duty to disclose records under the DPPAA has not been met through discovery.

[68] 12 *Del. C.* §49A-114(b)(3).

[69] 12 *Del. C.* §49A-114(b)(4).

not disclosed all of the records.[70]  The undisputed evidence shows that Sue has kept and maintained records of Richard Sr.'s affairs.  Since there is no evidence that Sue breached her duty with respect to keeping and maintaining financial records, David has failed to meet his burden and Sue is entitled to judgment on this issue.

B. *Transfers from County Bank to Accounts in Sue's Name*

David next points to two transfers from County Bank to accounts in Sue's name as evidence of her breach of fiduciary duties.[71]  On December 3, 2018, a transfer of $65,000 was made from Richard Sr.'s account at County Bank to an account in Sue's name.[72]  On November 19, 2019, there was a transfer of $49,000 from Richard Sr.'s County Bank account to the same account in Sue's name.[73]  David argues that these transfers show that Sue "has repeatedly used [Richard Sr.'s] funds as her own."[74]  Sue responds, in a sworn affidavit, that these transfers were to a property renovation account and "used for maintenance and renovations of [Richard Sr.'s] multiple rental properties," and that "[a]ll of the funds in this account were expended for the benefit of [Richard Sr.] and his rental properties."[75]

---

[70] *See* D.I. 44, at 8-10.

[71] *Id.*, at 4-5.

[72] D.I. 44, Ex. F.

[73] *Id.*

[74] D.I. 44, at 4.

[75] D.I. 52, Ex. A, ¶ 6; *see also* D.I. 52, at 9-10; D.I. 52, Ex. A, ¶ 7.

Accepting, for purposes of the Motion, David's factual assertions as true, these transfers do not show a breach of fiduciary duty. As agent, Sue owed Richard Sr. the duty to act loyally and to refrain from creating conflicts of interest.[76] David asks me to infer that the transfers to accounts in Sue's name are, by their very nature, improper transactions that resulted in Sue's personal benefit. I do not find that is a reasonable inference to draw.[77] David offers no evidence that Sue spent these monies in a wrongful way that did not benefit Richard Sr. Therefore, a claim for a fiduciary duty breach under the DPPAA cannot be sustained on these facts.

## C. *Transfers to the "Antiks" Account*

David next points to a number of transfers to an account that the parties identify as the "Antiks" account, named in reference to a business that their mother used to operate.[78] David identifies transfers totaling $55,000 to this account and argues that Sue breached her fiduciary duties by not disclosing the purpose of that account.[79] Sue responds that these transfers were necessary to pay Richard Sr.'s

---

[76] 12 *Del. C.* §49A-114(b)(1), (b)(2).

[77] I consider that Sue has made significant expenditures for Richard Sr.'s benefit while acting as his agent. Both his home healthcare (incurred before he relocated to the Brandywine facility) and the Brandywine facility cost in excess of $10,000 per month. *See* Sue Dep. Tr. 11:24-12:13. Sue marshalled Richard Sr.'s assets and disposed of properties to make those payments and keep up with expenses. *See* D.I. 52, Ex. A, ¶ 3; Sue Dep. Tr. 25:10-22.

[78] D.I. 44, at 5.

[79] *Id.*

healthcare expenses and other necessary expenses of her parents.[80] First, since Sue owed no duty under the POA to disclose receipts, disbursements, or transactions to David, the failure to disclose "what that account is for"[81] is not evidence of a breach of fiduciary duty in this matter. Next, I consider that Sue is required to "[a]ct with the care, competence, and diligence ordinarily exercised by agents in similar circumstances"[82] and to "[k]eep a record of all receipts, disbursements, and transactions made on behalf of the principal."[83] Based upon the record before me, I find no evidence that Sue has breached either of those duties related to the "Antiks" account. David has not produced evidence that indicates Sue maintained these bank accounts without care, competence, or diligence. Indeed, Sue's voluminous discovery production, including the detail provided on the memo lines of the checks, demonstrates that Sue kept fairly meticulous records.[84] Based upon the specific, admissible evidence before me concerning those transactions, I find there is no material factual dispute concerning the "Antiks" account.

D. *Payment of Sue's Legal Fees*

---

[80] D.I. 52, at 7-8; D.I. 52, Ex. A, ¶ 3. Sue specifically points to the memo lines of the check images that indicate what the funds were spent on, such as "Caregiving," or Richard Sr.'s caregiving expenses, or "Mom's headstone." D.I. 52, at 7-8.

[81] D.I. 44, at 5.

[82] 12 *Del. C.* §49A-114(b)(3).

[83] 12 *Del. C.* §49A-114(b)(4).

[84] *See* D.I. 44, Exs. J, K, L, M.

David next contends that legal fees Sue has paid from Richard Sr.'s funds are evidence of a breach of fiduciary duty.[85]  He argues that, since Richard Sr. was not joined as a party in this matter until October of 2020, Sue breached a fiduciary duty by using Richard Sr.'s funds to pay for counsel in this matter.[86]  Sue contends that she was permitted to expend funds out of the principal's assets to defend a legal action involving the principal.[87]

"An agent is entitled to reimbursement of expenses reasonably incurred on behalf of the principal."[88]  In *Estate of Dean*,[89] then-Master LeGrow held that attorneys' fees incurred by an agent under a personal power of attorney in the defense of a breach of fiduciary duty action were expenses "reasonably incurred on the behalf of the principal," subject to disgorgement should the court find the agent breached their fiduciary duties.[90]  It appears the attorneys' fees at issue here were incurred by Sue to defend the POA in the course of her duties as agent acting on Richard Sr.'s behalf.[91]  The POA authorizes Sue to employ attorneys and pay them

---

[85] D.I. 44, at 5-6.

[86] *Id.*

[87] D.I. 52, at 11.

[88] 12 *Del. C.* §49A-112(a).

[89] 2014 WL 3221222 (Del. Ch. June 30, 2014).

[90] *Id.*, at *9-10.

[91] Sue states, in a sworn affidavit, that the legal expenses paid to Ferry Joseph, P.A. were paid "to represent me in my capacity as trustee and . . . as agent under [the POA]." D.I. 52, Ex. A, ¶ 8.

"such salaries, wages or other remuneration as my Agent deems proper."[92]  Thus, since I find Sue is entitled to judgment as a matter of law in this litigation (so disgorgement is not proper), Sue's payment of her attorneys' fees related to this litigation from Richard Sr.'s funds does not represent a fiduciary breach.[93]

E. *Payments to Focus Dynamics*

David next contends that payments totaling $17,437.00 over seven years to Focus Dynamics, LLC ("Focus Dynamics"), a consulting firm owned by Sue and her husband, is evidence of a breach of fiduciary duty.[94]  Sue responds by sworn affidavit that she employed Focus Dynamics as agent to provide bookkeeping and accounting services on behalf of Richard Sr., at his request, and paid fees to Focus Dynamics ranging "from $25.00 per hour to $40.00 per hour."[95]

Sue was permitted under the POA to employ accountants, clerks and others in furtherance of the agency and for Richard Sr.'s benefit.[96]  Accordingly, Sue was within her authority as agent to employ Focus Dynamics for bookkeeping and

---

[92] D.I. 22, Ex. A, ¶ 20.

[93] The fact that Richard Sr. is represented by separate counsel in this litigation does not preclude the payment of Sue's attorneys' fees from Richard Sr.'s funds if her attorneys' fees were incurred on behalf of Richard Sr. and his POA.

[94] *See* D.I. 44, at 6; *Id.*, Ex. K.

[95] D.I. 52, Ex. A, ¶ 10.

[96] D.I. 22, Ex. A, ¶ 20.

accounting services. The inquiry next turns to whether Sue breached a fiduciary duty by engaging in these transactions.

As agent, Sue owed Richard Sr. a duty to act loyally[97] and to endeavor not to create conflicts of interests.[98] However, "[a]n agent that acts with care, competence, and diligence for the best interest of the principal is not liable solely because the agent also benefits from the act or has an individual or conflicting interest in relation to the property or affairs of the principal."[99] Here, Focus Dynamics, a company which Sue co-owns, received a benefit when it was employed to perform work on Richard Sr.'s behalf. However, even though Sue benefitted as a result of her actions as Richard Sr.'s agent, she will not be liable under the DPPAA if she acted with care, competence, and diligence in Richard Sr.'s best interest.[100] My calculations, based upon the evidence before me, show that Focus Dynamics was paid approximately $16,960.55 from Richard Sr.'s funds between January of 2014 and February of 2021.[101] Sue states that the hourly rate charged by Focus Dynamics for services provided ranged between $25.00 and $40.00, which is reasonable, given the types

---

[97] 12 *Del. C.* §49A-114(b)(1).

[98] 12 *Del. C.* §49A-114(b)(2).

[99] 12 *Del. C.* §49A-114(d).

[100] *Id.*

[101] D.I. 44, Exs. J, K.

of services provided.[102]  David asserts no impropriety about the services provided, or the rates charged, related to this employment, other than the self-dealing nature of it because of Sue's ownership interest in Focus Dynamics.  Given these circumstances, and the absence of any evidence that Sue acted without care, competence and diligence for Richard Sr.'s best interest in employing Focus Dynamics, I find there is no specific evidence that shows a breach of fiduciary duty on these facts.

F. *Payments to Richard Jr. for Maintenance of Real Property*

David next alleges that Sue's payment of $34,888.00 to Richard Jr. from Richard Sr.'s funds, while Sue was acting as agent, constitutes a breach of fiduciary duty.[103]  The evidence shows Sue reimbursed Richard Jr. for various expenses that Richard Jr. incurred in the maintenance and renovation of rental properties owned by Richard Sr.[104]  Sue stated, in her sworn affidavit, that "[s]ome of the payments [to Richard Jr.] were for reasonable compensation for his services and some of the

---

[102] *See* D.I. 52, Ex. A, ¶ 10.

[103] D.I. 44, at 6, 9.

[104] *See* Sue Dep. Tr., 30:17-31:2; D.I. 52, Ex. A, ¶ 9.  The record shows payments of approximately $34,531.22 to Richard Jr. from Richard Sr.'s funds between January of 2015 and August of 2020. D.I. 49, Exs. K, L, M.  There are notations on the checks to Richard Jr. such as "maintenance," "bathroom fixtures," "renovations," and indications as to which properties the payments are for. *Id.*  In her affidavit, Sue states that Richard Jr. had access to a bank account that was used for maintenance and renovations of Richard Sr.'s rental properties, and that all funds from that account "were expended for the benefit of [Richard Sr.] and his rental properties." D.I. 52, Ex. A, ¶ 6.

19

expenses were for supplies for the renovations and improvements to the rental properties. All of these expenses were for the benefit of my father."[105] David asserts that the amount paid to Richard Jr. "is an exorbitant sum for such services and well above the market rate."[106]

Sue, as agent under Richard Sr.'s Power of Attorney, had the duty to "[a]ct in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest,"[107] and to "[a]ct with the care, competence, and diligence ordinarily exercised by agents in similar circumstances."[108] David's unsworn allegation is not supported by the record, since there is no evidence that the payments to Richard Jr. were not reasonable, based upon the services provided, or as reimbursement for supplies or other services obtained by Richard Jr.[109] The undisputed evidence at summary judgment shows that Sue used Richard Jr. to help maintain and operate rental properties owned by Richard Sr. and that she paid Richard Jr. for expenses related to that work. The evidence does

[105] D.I. 52, Ex. A, ¶ 9.

[106] D.I. 44 at 6.

[107] 12 *Del. C.* §49A-114(a)(1).

[108] 12 *Del. C.* §49A-114(b)(3).

[109] *See generally In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 370 (Del. Ch. 2008) ("Instead of pointing to specific facts supportive of their claim, plaintiffs only offer unsupported allegations and inferences. That is insufficient to defeat summary judgment.") (internal quotation marks and citations omitted); *Thomas v. Hobbs*, 2005 WL 1653974 (Del. Super. Apr. 27, 2005) ("[A]n unsworn statement is not sufficient to create a dispute of fact to avoid summary judgment.").

not provide factual support for David's claim that Sue breached her fiduciary duty by making these payments to Richard Jr.

G. *Removal of Items from Richard Sr.'s Home*

David alleges Sue's removal of items from Richard Sr.'s home is evidence of her breach of fiduciary duties.[110] Although Sue does not specifically address this point,[111] the evidence shows that, after Richard Sr. was moved into the Brandywine facility, Sue and others removed valuables from Richard Sr.'s house for safekeeping and discarded what Sue considered as "junk."[112] Sue has not yet made an inventory of Richard, Sr.'s possessions.[113]

Sue, as Richard Sr.'s agent under the DPPAA, has the duty to "[a]ct in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest,"[114] and to "[a]ct with the care, competence, and diligence ordinarily exercised by agents in similar circumstances."[115] The POA authorizes Sue to "buy, sell, exchange, … or by any other means whatsoever, to acquire or dispose of tangible or intangible personal

---

[110] D.I. 44 at 6.

[111] D.I. 52.

[112] Sue Dep. Tr. 20:21-21:8; 57:18-58:10.

[113] *Id.*, at 58:11-14.

[114] 12 *Del. C.* §49A-114(a)(1).

[115] 12 *Del. C.* §49A-114(b)(3).

property."[116]  Under the POA, Sue is entitled to dispose of Richard Sr.'s property.

For a breach to occur, she must be shown as failing to act in Richard Sr.'s best

interest or to act with the care, competence, and diligence exercised by agents in

similar circumstances.[117]  Indeed, Sue's actions appear reasonable; when Richard Sr.

no longer lived in the property, she secured the property by safeguarding valuables

and removing clutter.  Therefore, there is no evidence of a breach of fiduciary duty

under the DPPAA on these facts.

H. *Sue's Instruction that Richard Sr.'s Health Care Providers not Communicate with David*

Finally, David contends that Sue's instruction to "at least one health care

professional to not provide information to David, evidences a breach of fiduciary

duty.[118]  This allegation does not pertain to a breach of fiduciary duty under the POA,

since the POA does not address decisions related to the principal's health care.[119]

And, the DPPAA governs durable personal powers of attorney, not health care

powers of attorney.[120]

---

[116] D.I. 22, Ex. A, ¶ 5.

[117] David claims that Sue did not include him in the process of cleaning out the family home. D.I. 44, at 6.  That, by itself, is not sufficient to demonstrate a lack of care, competence, or diligence on behalf of Richard, Sr.

[118] *Id.*

[119] *See* D.I. 22, Ex. A.  Richard Sr. has a separate power of attorney for health care. *See* D.I. 42, Ex. G.

[120] 12 *Del. C.* §49A-103(a)(4).

## I. *Sue's Use of Richard Sr.'s Funds to Give Gifts*

While not argued on summary judgment,[121] David's petition alleges that Sue gave "expensive gifts [to] family and friends" out of Richard Sr.'s funds.[122] For purposes of completeness, I address this issue. There is no evidence of such gifts in the record, which shows only that Sue gave modest periodic bonuses near holidays to Richard Sr.'s caregivers,[123] and a gift of $200 from Richard Sr. to Sue's son upon his graduation from law school.[124] Additionally, Sue used Richard Sr.'s credit card to purchase dinner and food items for Richard Sr. and family members from the West Coast visited Rehoboth Beach.[125]

The POA authorizes Sue to make gifts, including gifts to family members, in amounts up to $13,000.00 annually.[126] Again, Sue's duties under the DPPAA include the duties to act "in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest," and "with the care, competence, and diligence ordinarily exercised by

---

[121] *See* D.I. 44.

[122] D.I. 22, ¶ 17.

[123] *See, e.g.,* D.I. 44, Ex. K, at 12-13.

[124] Sue Dep. Tr. 55:16-24.

[125] *Id.*, 39:13-18; 56:11-17.

[126] D.I. 22, Ex. A, ¶ 27.

agents in similar circumstances."[127] These modest gifts were authorized by the POA and do not evidence a breach of Sue's duties under the DPPAA.

## V. CONCLUSION

I recommend that the Court grant Petitioner Sue Tikiob-Carlson's Motion for Summary Judgment, dismissing the Amended Petition. I find Sue has met her burden of showing there is no genuine issue of material fact because Respondent David Tikiob has offered no specific, admissible evidence to show Sue breached any duty she has as an agent under the POA or the DPPAA, after having an abundant opportunity – over the 20 months of this litigation (and the extensive discovery conducted) – to do so. Accordingly, I find David has failed to establish a material factual dispute and Sue is entitled to judgment as a matter of law. This is a final Master's Report, and exceptions may be taken under Court of Chancery Rule 144.

---

[127] 12 *Del. C.* §49A-114(a)(1); 12 *Del. C.* §49A-114(b)(3).