South Coll. St., LLC v Ares Capital Corp. (2021 NY Slip Op 06064)





South Coll. St., LLC v Ares Capital Corp.


2021 NY Slip Op 06064


Decided on November 04, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 04, 2021

Before: Acosta, P.J., Renwick, Kapnick, Kennedy, Mendez, JJ. 


Index No. 655045/19 Appeal No. 14561-14562-14562A Case No. 2020-03205 2021-01537 2021-01538 

[*1]South College Street, LLC, Plaintiff-Appellant,
v
Ares Capital Corporation, Defendant-Respondent.


Troutman Pepper Hamilton Sanders LLP, New York (Matthew J. Aaronson of counsel), for appellant.
Friedman Kaplan Seiler & Adelman LLP, New York (Stan Chiueh of counsel), for respondent.



Judgment, Supreme Court, New York County (Jennifer G. Schecter, J.), entered April 9, 2021, dismissing the action, unanimously affirmed, without costs. Appeals from orders, same court and Justice, entered on or about June 15, 2020, and March 30, 2021, which granted defendant's motion to dismiss the complaint and denied plaintiff's motion for leave to amend the complaint, respectively, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff seeks to enforce a 2019 judgment for unpaid rent under a lease guaranteed by nonparty Infilaw Corporation (Debtor) by setting aside, as fraudulent, payments made to defendant by nonparty Infilaw Holding, LLC (Holdco), on the theory that Holdco is Debtor's alter ego. The motion court correctly determined that, under applicable Delaware law, plaintiff failed to state an alter ego claim, because it did not allege facts that would support an inference that Holdco was created as a sham entity designed to defraud investors and creditors (see Crosse v BCBSD, Inc., 836 A2d 492, 497 [Del 2003]).
Plaintiff argues that the court erred in employing a standard that derives from mere dicta in one Delaware Chancery Court case (Wallace ex rel. Cencom Cable Income Partners II, L.P. v Wood (752 A2d 1175 [Del Ch 1999]). However, since Wallace was decided, that standard has been repeated and endorsed by the Delaware Supreme Court and other Delaware courts (see e.g. Crosse, 836 A2d at 497; see also In re Verizon Ins. Coverage Appeals, 222 A3d 566, 577 [Del 2019]; Doberstein v G-P Indus., Inc., 2015 WL 6606484, 2015 Del Ch LEXIS 275 [Del Ch 2015]). This Court has cited the standard in interpreting Delaware law (see Walnut Hous. Assoc. 2003 L.P. v MCAP Walnut Hous. LLC, 136 AD3d 403, 404 [1st Dept 2016]), and has cited Wallace directly (see 3 E. 54th St. N.Y., LLC v Patriarch Partners, LLC, 90 AD3d 418 [1st Dept 2011]). That federal courts in Oklahoma and Texas have taken a different approach does not alter our analysis (see Brady v UBS Fin. Servs., Inc., 2013 WL 1309250, 213 US Dist LEXIS 42252 [ND Okla 2013]; Asarco LLC v Americas Min. Corp., 2009 WL 2168778 [SD Tex 2009]).
Plaintiff cites cases applying Delaware law that say that a plaintiff alleging an alter ego theory of liability need not show that a corporation was created with fraud or unfairness in mind, but only that it was so used (e.g. NetJets Aviation, Inc. v LHC Communications, LLC, 537 F3d 168, 177 [2d Cir 2008]). However, even that standard requires "an element of fraudulent intent" that "must come from an inequitable use of the corporate form as a sham, and not from the underlying claim" (Soroof Trading Dev. Co., Ltd. v GE Microgen, Inc., 283 FRD 142, 151 [SD NY 2012] [internal quotation marks omitted]).
With respect to the "inequitable use of the corporate form," plaintiff alleges that defendant siphoned cash from Debtor and Holdco and that defendant maintained "specific controls" over Debtor and Holdco. However, to plead that [*2]Holdco is Debtor's alter ego requires allegations that Debtor and Holdco siphoned funds from each other or that one wielded total control over the other (see e.g. Soroof, 283 FRD at 152; Jones Lang Lasalle Brokerage, Inc. v Epix Entertainment LLC, 61 Misc 3d 1226[A], 2018 NY Slip Op 51799[U], *6 [Sup Ct, NY County 2018]).
Plaintiff alleges that Debtor and Holdco were parties to all relevant agreements with defendant, that funds to pay defendant were obtained via "sweeps" of Debtor's bank accounts, and that the Debtor and Holdco were treated as a partnership for tax purposes and submitted consolidated financial statements. However, these indicia of interrelatedness do not demonstrate that Holdco's corporate form was being misused (see Bristol-Myers Squibb Co. v Aurobindo Pharma USA Inc., 2018 WL 5109836, 2018 US Dist LEXIS 179154 [D Del 2018]; Case Fin., Inc v Alden, 2009 WL 2581873, 2009 Del Ch LEXIS 153 [Del Ch 2009]; In re Learningspring School v Delta Dallas Alpha Corp., 2014 WL 4927704 [Sup Ct, NY County 2004]).
Plaintiff alleges that Debtor and Holdco referred to themselves as a single "Institution" in filings with the U.S. Department of Education. However, this representation does not establish that Debtor and Holdco operated as a "unified economic entity" (see Soroof, 283 FRD at 152). The allegation that Holdco benefitted from a release that Debtor funded in connection with a certain class action fails to allege any misconduct in this regard, for example, that the plaintiffs were somehow misled about the scope of the release or the source of its funding (to the contrary, these matters are alleged to have been disclosed in an affidavit and other filings). Accordingly, we affirm the court's determinations as to the four dividend payments made by Holdco between July 2015 and April 2016.
We also affirm the court's determinations as to the payments made by Debtor in connection with the credit agreement between itself and defendant, and, given defendant's status as Debtor's secured creditor pursuant to the credit agreement, the court's rejection of plaintiff's claims with respect to those payments in reliance on Englander Capital Corp. v Zises (60 Misc 3d 659, 664 [Sup Ct, NY County 2018]). Plaintiff failed to plead an exception to Englander. While, on a motion to dismiss, the facts should be accepted as true, plaintiff's allegations in this respect are bare legal conclusions, which are not entitled to be accepted as true (Patriarch Partners, 90 AD3d at 419).
Plaintiff contends that the 2011 Preferred Unit Purchase Agreement and the credit agreement themselves were fraudulent/sham transactions. However, the amended pleading alleges, upon information and belief, that Debtor and Holdco were insolvent "as of June 2015," and fails to allege facts that would establish that the insolvency was anticipated before then. Similarly, there are no facts alleged that would support plaintiff's conclusory assertion that the $4.3 million that defendant allegedly [*3]required Debtor or Holdco to pay to facilitate the 2011 transactions was a "sham" transaction; this, too, would have occurred well before the alleged insolvency.
Defendant's alleged actions after Debtor/Holdco allegedly became insolvent, such as scaling back on the revolving line of credit, are more readily construed as prudent business decisions than fraudulent activity that would justify departure from the Englander rule. Plaintiff also failed to allege facts that would support its contention that the 2016 amendment to the credit agreement, where, in exchange for a 2% interest rate increase, Holdco's maturity date was extended by five months, was made in bad faith or not for fair consideration (see In re Moll Indus., Inc., 454 BR 574, 591 [Bankr D Del 2011). Nor are there facts alleged that would support plaintiff's conclusory assertion that the amendment was intended to prejudice its ability to protect its rights; indeed, plaintiff continued to receive rent payments under the lease for 21 months after the amendment was executed.
Plaintiff's allegations that Debtor's payments were pursuant to a sham transaction or transactions, rather than payments on antecedent debt pursuant to the credit agreement, are speculative, and further justify the denial of plaintiff's motion for leave to amend (see CPLR 3025[b]; Bishop v Maurer, 83 AD3d 483, 485 [1st Dept 2011]).
We have considered plaintiff's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 4, 2021